John H. ANDERSON, Appellant,

v.

UNITED STATES DEPARTMENT OF
the TREASURY, INTERNAL
REVENUE SERVICE, et al.

No. 78–1085.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 9, 1979.

Decided April 20, 1979.

William E. Persina, Washington, D. C.,
with whom Robert M. Tobias, Washington,
D. C., was on brief, for appellant.

Murray S. Horwitz, Atty., Dept. of Jus-
tice, Washington, D. C., with whom Earl J.
Silbert, U. S. Atty., M. Carr Ferguson, Asst.
Atty. Gen., Dept. of Justice, and Crombie J.
D. Garrett, Attys., Dept. of Justice, Wash-
ington, D. C., were on brief, for appellee.

Before TAMM and ROBINSON, Circuit
Judges, and GESELL,* United States Dis-
trict Court Judge for the District of Colum-
bia.

PER CURIAM:

After exhausting his administrative rem-
edies, appellant Anderson brought suit in
the District Court seeking access, pursuant
to the Privacy Act,[1] to an "inspection file"
maintained on him by his employer, the
Internal Revenue Service (IRS). An "in-
spection file" documents investigations by
the agency's inspection service into com-

---

* Sitting by designation pursuant to 28 U.S.C.
§ 292(a) (1976).

1. 5 U.S.C. § 552a (1976).

plaints of misconduct filed against IRS employees. Rejecting IRS's exemption claims,[2] the District Court granted summary judgment for Anderson.[3] The agency was permitted, however, to delete the names of third parties mentioned in Anderson's inspection file.[4] These rulings were not appealed.

Anderson subsequently moved for an award of attorney's fees in the amount of $6,775, a figure computed by placing a market value of $60 and $70 per hour, respectively, on the services of his two lawyers.[5] IRS conceded that Anderson "substantially prevailed" in his Privacy Act suit and agreed that he was entitled to an award of attorney's fees.[6] The agency objected, however, to the size of the fees requested, pointing out that Anderson's attorneys were salaried employees of the National Treasury Employees Union.[7] IRS speculated that Anderson's attorneys were compensated by the Union at a rate far below $60 or $70 per hour,[8] and this hypothesis was confirmed by the attorneys involved.[9] Anderson's counsel responded, however, that their in-house salaries should be irrelevant and that fees should be assessed at the prevailing rate charged by private Washington practitioners performing comparable services.[10]

■ The District Court awarded appellant $2,000 in attorney's fees.[11] The court began with the assumption—eminently correct in our view [12]—that the purpose of the Privacy Act provision authorizing assessment of counsel fees against the Government "is not to reward a successful litigant" but "to ensure that the costs of litigation do not present a barrier to the average citizen seeking to ascertain the accuracy of information maintained on him by the Government." [13] Noting that Anderson received representation by his union's attorneys pursuant to a prepaid legal services plan,[14] the court nevertheless resolved that the union should be permitted to recoup its expenses.[15] The court further stated that although it felt empowered to award fees at the prevailing commercial rate, such an award would be inappropriate where the lawsuit vindicated important private interests but did not benefit the general public, and where such an award would "result in a windfall profit to the Union at the expense of the public fisc." [16] Anderson appeals.

■ Awards of attorney's fees to prevailing plaintiffs in Privacy Act suits are statutorily authorized:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.[17]

The congressional intent in enacting this provision was summed up in the House Report:

**2.** IRS maintained that the investigation file was exempt under 5 U.S.C. §§ 552a(j)(2), 552a(k)(2) (1976).

**3.** *Anderson v. Department of Treasury*, Civ.No. 76–1404 (D.D.C. Sept. 15, 1977) (unpublished), Appendix (App.) 88.

**4.** *Id.* at 13, App. 100. This leave was granted pursuant to 5 U.S.C. § 552a(b) (1976).

**5.** App. 118–129.

**6.** App. 131. See 5 U.S.C. § 552a(g)(3)(B) (1976), quoted in text *infra* at note 17.

**7.** App. 132.

**8.** App. 132–133.

**9.** App. 136.

**10.** App. 136–137.

**11.** *Anderson v. Department of Treasury*, Civ.No. 76–1404 (D.D.C. Nov. 16, 1977) (order granting attorney's fees and litigation expenses) (unpublished), App. 145.

**12.** See note 20 *infra.*

**13.** *Anderson v. Department of Treasury, supra* note 11, at 2, App. 146.

**14.** *Id.*

**15.** *Id.*

**16.** *Id.* at 3, App. 147.

**17.** 5 U.S.C. § 552a(g)(3)(B) (1976). See also 5 U.S.C. § 552a(g)(2)(B) (1976).

Reasonable attorney fees and costs may be assessed against the government in any case where the plaintiff substantially prevailed. It is intended that such award of fees not be automatic, but rather, that the courts consider the criteria as delineated in the existing body of law governing the award of fees.[18]

Thus Congress plainly contemplated that courts would exercise discretion in deciding whether to award fees to successful plaintiffs in Privacy Act cases, and the stipulation of a "reasonable" fee indicates clearly enough that judicial discretion in fixing the amount of attorney's fees was also envisioned.[19]

█ Resolution of this appeal was simplified at oral argument when appellant's counsel, in response to questioning from the bench, stated that all court-awarded attorney's fees would go to the union. We have explained our position on this sort of proposal before:

It is our view that the award must go to counsel rather than to the organizations which pay their salaries. This is sound,

whether such organization is a litigating party or a public interest law firm or defense fund. This procedure avoids all problems of whether the organization might, by receiving an award directly, be involved in the unauthorized practice of law.[20]

Since the objective in this case is essentially a fee award for the union and not for counsel themselves, we agree with the District Court that the ceiling is proper reimbursement to the union, and that no fee exceeding the expenses incurred by the union—in terms of attorney's salaries and other out-of-pocket expenses—should be allowed.[21]

█ The $2,000 figure chosen by the District Court, however, has no support in the record. The court listed appropriate considerations and apparently settled on a figure it considered reasonable, but that judgment should have been informed by an awareness of the cost to the union of providing attorneys to represent appellant in his Privacy Act suit.[22] To enable the court to reconsid-

---

18. H.R.Rep. No. 1416, 93d Cong., 2d Sess. 17.

19. *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 182 U.S.App.D.C. 83, 89–95, 559 F.2d 704, 710–715 (1977); *Cuneo v. Rumsfeld,* 180 U.S.App.D.C. 184, 189–192, 553 F.2d 1360, 1365–1368 (1977); *Larionoff v. United States,* 175 U.S.App.D.C. 32, 52, 533 F.2d 1167, 1187 (1976), aff'd on other grounds, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Kiser v. Huge,* 170 U.S.App.D.C. 407, 423, 517 F.2d 1237, 1253 (1974); *Green v. Transitron Elec. Corp.,* 326 F.2d 492, 496 (1st Cir. 1964).

20. *Wilderness Soc'y v. Morton,* 161 U.S.App. D.C. 446, 457, 495 F.2d 1026, 1037 (*en banc* 1974), rev'd on other grounds sub nom. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); accord *National Treasury Employees Union v. Nixon,* 172 U.S.App.D.C. 217, 222, 521 F.2d 317, 322 (1975). *Contra, Fairley v. Patterson,* 493 F.2d 598, 605–607 (5th Cir. 1974). See generally, ABA Code of Professional Responsibility, D.R. 3–102.

Although courts have some equitable authority to direct an award of counsel's fees to a proper recipient, see *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539 (5th Cir. 1970); Note, *Awards of Attorney's Fees to Legal Aid Offices,* 87 Harv.L.Rev. 411, 422 (1973), we do not think that power, even if otherwise it extends to the situation before us—a question

we do not decide—would be soundly exercised here, in the face of the existing expectations of counsel and their employer respecting the destination of the award, and in the absence of any overriding public policy supporting an award in excess of the actual cost of pursuing Anderson's privacy action. See *Nationwide Bldg. Maintenance, Inc. v. Sampson, supra* note 19, 182 U.S.App.D.C. at 90, 559 F.2d at 711, where we pointed out that the attorney's fee provision of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1976),

was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold [;] [i]t had a more limited purpose— to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.

21. The fee will go to the attorneys, who will reimburse their employer. *Cf. National Treasury Employees Union v. Nixon, supra* note 20, 172 U.S.App.D.C. at 222, 521 F.2d at 322.

22. See, e. g., *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470–471 (2d Cir. 1974); *Grunin v. International House of Pancakes,* 513 F.2d 114,

er its order and place an award of attorney's fees on a sounder factual predicate, we vacate the order and remand the case.

*So ordered.*

127–129 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).