Jesse L. **HARPER**

v.

**BETTER BUSINESS SERVICES, INC.**

**Civ. No. 1:89–cv–2260–WCO.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 30, 1991.

Susan M. Hartwig, UAW Legal Service Plan, Atlanta, Ga., for Jesse L. Harper.

George Michael Smith, Dean Setliff & Smith, Atlanta, Ga., for Better Business Services, Inc.

## ORDER

O'KELLEY, Chief Judge.

This case came before the court for a nonjury trial on March 25, 1991, after default judgment was granted for plaintiff Jesse L. Harper (Harper) in his lawsuit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (FDCPA). After careful consideration, the court awards plaintiff costs and statutory damages in the amount of $1,000. The court reserves ruling on plaintiff's request for attorneys' fees and directs UAW Legal Services to submit information by affidavit or otherwise, within ten days from the date this order is issued, regarding attorney Susan M. Hartwig's (Hartwig) hourly rate, based on her annual salary, and the amount of UAW Legal Services' overhead allocable to the litigation of this case.

## DISCUSSION

At trial, plaintiff sought actual damages, statutory damages, costs and attorneys' fees. Section 1692k provides:

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damages sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(1), (2)(A), (3).

### A. Actual Damages

Plaintiff presented no evidence at trial regarding actual damages; accordingly, the court awards none.

## B. Statutory Damages

█ Plaintiff argues that the $1,000 statutory maximum applies to each violation of the FDCPA, citing *Kaschak v. Raritan Valley Collection*, Civil No. 88–3763 (D.N.J.1989), *Ewing v. Messerli*, Civil No. 87–5036 (D.S.D.1988), and *Florence v. National Systems*, Civil No. C82–2020A (N.D.Ga., Shoob, J. 1983). As the court in *Kaschak* observed, however: "There is no controlling authority on point and district courts have reached opposite conclusions." The case of *Harvey v. United Adjusters*, 509 F.Supp. 1218 (D.Or.1981) is instructive:

In any one action, the statutory damage award may not exceed $1,000.00. The plaintiff has argued that the statute should be interpreted to provide for a statutory damages award of $1,000.00 *per transaction or communication.* If the debt collector knows that its maximum liability per debtor is $1,000.00 regardless of the number of types of abusive collection attempts, there is no incentive to comply with the Act after the initial abusive practice.... Plaintiff argues that Congress could not have intended this result and asserts that total liability for one plaintiff should not be limited to $1,000.00.

While plaintiff's argument has merit, I find that the $1,000.00 per action limitation does not defeat the purpose of the Act and is consistent with its provisions. Section 1692k(a)(2)(A) specifically provides that "in any action" the court may allow damages "not exceeding $1,000.00." ... It appears that the intent of Congress is that in an aggravated case of persistent and repeated illegal practices, the full $1,000.00 should be awarded; in other cases the Court has discretion to award any amount less than that or nothing at all in addition to actual damages.

*Id.* at 1222. *See also Crossley v. Lieberman*, 868 F.2d 566, 572 (3d Cir.1989) (approving award of $1,000 statutory maximum under section 1692k(a)(2)(A)). The court agrees with *Harvey* and finds that the plain language of section 1692k(a)(2)(A) provides for maximum statutory damages of $1,000. Accordingly, plaintiff's recovery of statutory damages is limited to a $1,000 maximum.

The standard for determining the amount of statutory damages is provided in section 1692k(b)(1):

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional....

15 U.S.C. § 1692k(b)(1). In this case, Better Business Services, Inc. (BBS) tried to collect a debt from Harper for dental services rendered by Pearle Dental to his children. Under Harper's divorce decree, he is not liable for this debt. When BBS first contacted Harper regarding the debt, Harper informed BBS that he was not responsible for this debt. Despite this notice and further communications from Harper's attorney, BBS continued to contact Harper regarding this debt.

Plaintiff alleges seven violations of the FDCPA by defendant Better Business Services, Inc. (BBS). First, BBS violated section 1692e(2) when it falsely represented to Harper that it had a judgment against him. In addition, BBS misrepresented the character and amount of the debt by stating that Harper owed attorney's fees and court costs. Second and third, BBS violated sections 1692e(4) and 1692e(5) when it threatened, in a letter to Harper, to garnish his wages, levy on his property, auto, checking, and savings account as well as other unspecified action. BBS violated section 1692e(4) by misrepresenting its ability to seize Harper's assets; it violated 1692e(5) by threatening to take action that could not legally be taken. Fourth and fifth, BBS violated section 1692e(11) when it sent two debt collection notices to Harper without including the words: "... that the debt collector is attempting to collect a debt and that any information obtained will be used

for that purpose." Sixth and seventh, BBS violated section 1692c(a)(2) when it sent two letters directly to Harper despite its actual knowledge that Harper was represented by an attorney.

■ The evidence and trial testimony show that defendant committed the aforementioned violations of the FDCPA as alleged by plaintiff. In light of defendant's repeated violations of the FDCPA and his actions toward plaintiff, the court, in its discretion, awards plaintiff the full $1,000 in statutory damages.

## C. Attorneys' Fees and Costs

■ Under section 1692k(a)(3), plaintiff is entitled to costs and a reasonable attorneys' fee as determined by the court. At the trial, Hartwig, the attorney for plaintiff, requested attorneys' fees of $6,250, which represents 50 hours at $125 per hour. Hartwig is a salaried employee of UAW Legal Services. Plaintiff, a member of the UAW union, has received Hartwig's legal services as a fringe benefit of his employment, for which a portion of his salary is contributed to UAW Legal Services. In absence of evidence to the contrary, the court presumes that the attorneys' fee award will go to UAW Legal Services and that UAW Legal Services is funded by the UAW union.

Hartwig argues that attorneys' fees should be calculated according to the "prevailing market rate," citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In both cases, the United States Supreme Court approved of the recovery of attorneys' fees by nonprofit legal services organizations according to the prevailing market rates for hours billed rather than according to the actual cost of providing the legal services. These cases are not applicable to the case at bar, however, because the provider of legal services in this case is the union. *See Goodrich v. Department of the Navy*, 733 F.2d 1578, 1580 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985).

Although the Eleventh Circuit has not addressed the issue of recovery of attorneys' fees by unions, other courts addressing this issue have generally rejected fee awards based on prevailing market rates.

In *Anderson v. United States Department of the Treasury*, 648 F.2d 1 (D.C.Cir. 1979), the plaintiff's attorneys were salaried employees of his union who represented him pursuant to a prepaid legal services plan. The district court had refused to award attorneys' fees in excess of expenses incurred by the union: "The [district] court ... stated that although it felt empowered to award fees at the prevailing commercial rate, such an award would be inappropriate where the lawsuit vindicated important private interests but did not benefit the general public, and where such an award would 'result in a windfall profit to the Union at the expense of the public fisc.'" 648 F.2d at 2. The District of Columbia Circuit agreed: "Since the objective in this case is essentially a fee award for the union and not for counsel themselves, we agree with the District Court that the ceiling is proper reimbursement to the union, and that no fee exceeding the expenses incurred by the union—in terms of attorney's salaries and other out-of-pocket expenses—should be allowed." *Id.* at 3.

In *National Treasury Employees Union v. United States Department of the Treasury*, 656 F.2d 848 (D.C.Cir.1981) (*NTEU*), which was issued as a supplemental opinion to *Anderson*, the District of Columbia Circuit "elaborat[ed] on the principles underlying [*Anderson*]...." 656 F.2d at 850. First, the court specified that the basis of its holding was the ethical provisions of the ABA Code of Professional Responsibility:

Lawyers are free to accept employment by an organization offering a prepaid legal services plan to its member, but only if '[s]uch organization, including any affiliate, is so organized and operated that no profit is derived by it from the rendition of legal services by lawyers....' This restriction is closely related to two more of the Code's most fundamental prohibitions. Attorneys

may not split fees with laymen or lay organizations, or enable them to engage in the unauthorized practice of law.

*Id.* at 851 (citing ABA Code of Professional Responsibility at DR 2–103(D)(4)(a), DR 3–101(A), DR 3–102). Honoring these ethical considerations, the court reiterated its belief that "an allowance of above-cost fees to the union is inappropriate." *Id.* at 853. The court next distinguished decisions in which legal aid offices and public interest organizations were awarded market-value fees:

> We ourselves have observed that full-fee allowances to public interest law firms may be necessary to effectuate the "private attorney's general" concept implicit in much of Congress' antidiscrimination legislation.... The important consideration is that in these instances the fees are plowed back into the litigative programs that made their recovery possible in the first place.

> Here, in contrast, there is no hint whatsoever that the sought-after fees would be similarly devoted. So far as we know, they would go toward enrichment of the union's coffers and support of its diverse operations. The amount over and above the union's actual cost, we reemphasize, would be a profit on the legal services generating the fees. The ethical exception for fee-splitting within a law office obviously is not applicable, and the policies endorsed by Congress and the courts are not implicated.

*Id.* at 854–55 (footnotes omitted). Thus, the union's fee award was limited to the costs incurred in providing legal services.

In *Goodrich v. Department of the Navy,* 733 F.2d 1578 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985) the Federal Circuit affirmed the Merit Systems Protection Board's (MSPB) limitation of an attorneys' fee award to expenses incurred by the union in providing legal services. In his motion for attorneys' fees, the union attorney stated that the union had established a legal services fund,

separate from the union's general treasury, into which all attorneys' fee awards were deposited. Based on dicta in *NTEU, see* 656 F.2d at 855 ("perhaps, too, such allowances would withstand criticism when the monies are directed into a fund for maintenance of a legal services program"), he argued that a market-rate attorneys' fee was appropriate. The court first noted the MSPB's response to this argument:

> [T]he fact remains that the application of the market-value formula to the fee award here would allow petitioner to profit from the underlying activities of the attorneys in this matter. The extent of such a profit, as the Administrative Law Judge correctly recognized, would be commensurate with the extent to which such an award would relieve petitioner of the burden of financing its litigation activities through its general revenue funds. The well-established ethical principles recognizes in *NTEU* prohibit this result.

733 F.2d at 1580 (quoting *Wells v. Schweiker,* 82 FMSR para. 7053 (1982)). Because the union's legal services organization was funded at least in part by the union, the court similarly found that a market-rate fee award would result in an inappropriate indirect benefit to the union, that is, the utilization of attorneys' fee awards for the union's ordinary expenses. *Id.*

Only one circuit has rejected *Anderson, NTEU,* and *Goodrich.* In *Curran v. Department of the Treasury,* 805 F.2d 1406 (9th Cir.1986), the Ninth Circuit approved a market-rate attorneys' fee award to a union that had established a separate legal fund. Disagreeing with the *NTEU* court's ethical concerns, the court "perceived no ethical barrier to compensation at market rate." *Id.* at 1409. Furthermore, the court rejected the theory that a market-rate award to the union would create an inappropriate indirect benefit. *Id.* at 1409–10.

The court disagrees with *Curran* and finds the reasoning of *Anderson, NTEU,* and *Goodrich* persuasive.[1] In this case,

---

**1.** Other cases in accord with *Anderson, NTEU* and *Goodrich* include *Munsey v. Federal Mine Safety and Health Review Com'n,* 701 F.2d 976, 977 (D.C.Cir.1983), *cert. denied sub nom. Smitty Baker Coal Co. Inc. v. Federal Mine Safety and Health Review Com'n,* 464 U.S. 851, 104 S.Ct.

plaintiff seeks to vindicate a purely private right; no public benefit will result from a fee award to UAW Legal Services. In addition, a fee award based on prevailing market rates to UAW Legal Services would result in an inappropriate economic benefit to the UAW union,[2] which would in turn create ethical problems. *See* Georgia Code of Professional Responsibility at DR 3–101(A), DR 3–102(A). Accordingly, the court shall limit recovery of attorneys' fees to the costs incurred in providing legal services to plaintiff. Plaintiff shall be entitled to an attorneys' fee award, to be paid to UAW Legal Services, consisting of (1) Hartwig's hourly rate, based upon her annual salary, multiplied by fifty hours and (2) UAW Legal Services' overhead allocable to this case.

## CONCLUSION

The court denies actual damages and awards costs and statutory damages in the amount of $1,000 to plaintiff. The court reserves ruling on plaintiff's request for attorneys' fees and directs UAW Legal Services to submit information, by affidavit or otherwise, within ten days from the date this order is issued regarding Hartwig's hourly rate, based on her annual salary, and the amount of UAW Legal Services' overhead allocable to the litigation of this case.

IT IS SO ORDERED.

163, 78 L.Ed.2d 149 (1983), *Devine v. National Treasury Employees Union,* 805 F.2d 384, 389 (Fed.Cir.1986), *cert. denied sub nom. National Treasury Employees Union v. Horner,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), *Johnson v. Orr,* 739 F.Supp. 945, 947 (D.N.J.1988), *Johnson v. United States,* 16 Cl.Ct. 321, 325–26 (1989), and *Sabey v. United States,* 6 Cl.Ct. 36 (1984).

2. Assuming the existence of a separate legal fund into which the fee award would be deposited, an inappropriate indirect benefit would still result. *See Goodrich,* 733 F.2d at 1580.