Darlene M. DONAHUE, Plaintiff,

v.

NFS, INC. d/b/a National Financial Services, Defendant.

Darlene M. DONAHUE, Plaintiff,

v.

N. Frank LANOCHA, Esquire, Defendant.

Nos. CIV–90–1185S, CIV–91–51S.

United States District Court,
W.D. New York.

Dec. 30, 1991.

Ruth R. Wiseman, UAW–GM Legal Services Plan, Lockport, N.Y., for plaintiff.

No appearance for defendants.

## DECISION/ORDER

SKRETNY, District Judge.

### INTRODUCTION

Now before this Court are the motions of the plaintiff Darlene Donahue ("plaintiff") for a default judgment, pursuant to Fed. R.Civ.P. 55(b) in each of the above-captioned cases. The defendants in each case, NFS Inc. d/b/a/National Financial Services ("NFS") (CIV–90–1185S) and N. Frank Lanocha, Esq. ("Lanocha") (CIV–91–51S) (collectively the "defendants") having failed to file an Answer or otherwise move for dismissal of the Complaint, failed to appear in these actions and, similarly, do not respond to the plaintiff's motions.

Because both lawsuits involve the same plaintiff, similar claims and, more importantly, conduct by both defendants which plaintiff alleges caused her physical and emotional damages, this Court, *sua sponte*, will address both cases in this single Decision/Order.

In each case, the plaintiff alleges that the defendants violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* According to the Complaints, the alleged violations stem from three debt collection notices ("the Notices") mailed by the defendants—one by NFS and two by Lanocha—to the plaintiff which demand payment of a single debt of $18.94 allegedly owed by the plaintiff to American Family Publisher. (CIV–90–1185S, Plaintiff's Affidavit, exh. A).

In her Complaints and via her motions, the plaintiff seeks actual and additional damages and attorneys' fees and costs, all pursuant to the FDCPA. This Court has jurisdiction of these lawsuits pursuant to 15 U.S.C. § 1692k(d).

In support of her motion in CIV–90–1185S, the plaintiff has filed her affidavit, a legal memorandum, and the affidavits of plaintiff's counsel Ruth Wiseman, Esq. In support of her motion in CIV–91–51S, the plaintiff has filed an affidavit of plaintiff's counsel, also Ruth Wiseman, Esq. Additionally, on October 17, 1991, this Court held a hearing with respect to the issue of plaintiff's actual damages stemming from her receipt of the Notices.

*Conclusion:* For the reasons set forth below, this Court grants the plaintiff's motions for default judgment in CIV–90–1185S and CIV–91–51S and awards actual and additional damages, attorneys' fees and costs in each case, as provided below.

### DISCUSSION

I. *Procedural History*

A. CIV–90–1185S

On November 16, 1990, the plaintiff filed her Complaint. On January 2, 1991, the

plaintiff served the Summons and Complaint on NFS. (CIV–90–1185S, Wiseman Affidavit, March 15, 1991, exh. A).

On March 18, 1991, the plaintiff, having received no response from NFS, filed a motion for an entry of default with the Clerk of the Court. On March 20, 1991, the Clerk of the Court filed an Entry of Default in the case. Subsequently, on June 26, 1991, the plaintiff filed the present motion seeking a Default Judgment for actual and additional damages, attorneys' fees and costs.

Although the plaintiff submitted an affidavit with respect to her claim to actual damages, finding the affidavit inconclusive on the plaintiff's entitlement to actual damages, this Court further held a hearing on October 17, 1991, at which the plaintiff, and no other witnesses, testified.

### B. CIV–91–51S

On January 28, 1991, the plaintiff filed her Complaint. On March 13, 1991, the plaintiff served the Summons and Complaint on Lanocha. (CIV–91–51S, Wiseman Affidavit, April 9, 1991, exh. A).

On April 10, 1991, the plaintiff, having received no response from Lanocha, filed a motion for an entry of default with the Clerk of the Court. On April 16, 1991, the clerk of the Court filed an Entry of Default in the case. Subsequently, on August 16, 1991, the plaintiff filed the present motion seeking a Default Judgment for actual and additional damages, attorneys' fees and costs.

The Hon. Richard J. Arcara originally presided over CIV–91–51S. Due to the similarities between CIV–91–51S and CIV–90–1185S, on December 10, 1991, Judge Arcara transferred CIV–91–51S to this Court.

Recognizing that CIV–91–51S remains not only factually similar to CIV–90–1185S, but that plaintiff's claim to actual damages stems from the conduct of NFS and Lanocha, this Court inquired of plaintiff, through her counsel Wiseman, whether the hearing testimony already received in CIV–90–1185S could also be applied to CIV–91–51S. After consulting with counsel, plaintiff agreed to apply her hearing testimony to both lawsuits.

### II. Plaintiff's Entitlement To "Additional" Damages

#### A. CIV–90–1185S

In CIV–90–1185S the plaintiff alleges five separate violations by NFS of four provisions of the FDCPA, all stemming from a single notice sent to the plaintiff.[1] (CIV–90–1185S, Motion For Default Judgment, exh B). Specifically, the plaintiff alleges that NFS violated: 1) 15 U.S.C. § 1692g (insufficient debt validation notification due to size and color of type *and* a misleading response date)[2]; 2) 15 U.S.C. § 1692e(11) (insufficient debt collection disclosure due to size of type); 3) 15 U.S.C. § 1692e(5) (threat to take legal action not actually intended to be taken); and 4) 15 U.S.C. § 1692e(3) (false implication that plaintiff would need to retain an attorney).

The plaintiff seeks additional damages of $5,000.00, or $1,000.00 per each alleged violation.

Section 1692k(a)(2)(A) ("§ 1692k") provides for the award of actual and "additional" damages as follows:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

---

[1] The Complaint, plaintiff's affidavit and all other documentary evidence before this Court include and refer to a single notice sent by NFS. There is no other evidence which, in light of the factual record before this Court, could lead it to conclude that NFS sent the plaintiff more than a single notice. At the hearing on plaintiff's motion, this Court learned for the first time that the plaintiff actually received several debt collection notices from several debt collection agencies with respect to several different debts. However, nothing at the hearing leads this Court to conclude that NFS sent the plaintiff more than one notice.

[2] Thus the plaintiff alleges two separate violations of 15 U.S.C. § 1692g. (*See* CIV–90–1185S, Plaintiff's Legal Memorandum, p. 6).

(1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000....

In seeking $5,000.00 damages predicated on five alleged FDCPA violations, the plaintiff argues that § 1692k authorizes up to $1,000.00 per FDCPA violation in a single suit, that is, according to plaintiff, a FDCPA plaintiff could recover more than $1,000.00 additional damages in a single lawsuit where there are multiple FDCPA violations.

Although some unreported cases support the plaintiff's interpretation of § 1692k, relying on the plain language of § 1692k, recently several federal courts, in reported decisions, have held that § 1692k only authorizes a maximum award of $1,000.00 additional damages per lawsuit, irrespective of the number of violations. *See, Harper v. Better Business Services, Inc.*, 768 F.Supp. 817 (N.D.Ga.1991) (statutory language supports conclusion that statute authorizes a maximum $1,000 additional damage award per lawsuit); *Beattie v. D.M. Collections, Inc.*, 764 F.Supp. 925 (D.Del. 1991) (statutory language read together with other provisions of § 1692k support conclusion that statute authorizes a maximum $1,000 additional damage award per lawsuit); *Harvey v. United Adjusters*, 509 F.Supp. 1218 (D.Or.1981) (same). The Second Circuit has not addressed this issue.

■ Viewing the plain statutory language, this Court agrees with the latter view and holds that, in this case, the plaintiff may recover a maximum of $1,000.00 additional damages despite the fact that the plaintiff alleges that NFS has committed five FDCPA violations. In so holding, this Court expressly disagrees with other unpublished opinions, cited by the plaintiff in this case, concluding that § 1692k authorizes additional damages on a per violation basis. Those opinions do not reconcile their holdings with the plain language of the statute. *See Beattie, supra,* 764 F.Supp. at 927 (also disagreeing with *Florence v. National Systems*, Civ. 82–2020A

(N.D.Ga.1983) and *Kaschak v. Raritan Valley Collection Agency*, Civ. 88–3763, 1989 WL 255498 (D.N.J.1989), cited by plaintiff in this case).

■ Section 1692k(b)(1) mandates that this Court consider specific factors, among others, when determining whether to award the plaintiff additional damages. These factors are:

the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional....

The plaintiff argues that NFS' violations "... are apparently intentional" because NFS "... knew of the requirement to include the debt validation notice ... and the debt disclosure ... and they were included, but in a meaningless manner." (CIV–90–1185S, Motion For Default Judgment, ¶ 24). Plaintiff also argues that the fact that NFS printed part of the notice with a "... minute type size and in a lighter type than the rest of the notice" indicates NFS' willful and intentional noncompliance. The plaintiff also cites the fact that NFS utilized larger and capitalized type to enhance threatening language. (CIV–90–1185S, Plaintiff's Legal Memorandum, p. 12).

First, as to the frequency and persistence of NFS' noncompliance, this Court emphasizes that the record indicates that NFS sent one collection notice to the plaintiff. Second, as to the issue of NFS' intentional noncompliance, although the plaintiff argues that NFS' violations were intentional, there is insufficient evidence before this Court which could lead this Court to conclude that NFS' violations were intentional or, moreover, designed to deceive the plaintiff. It is arguable, as the plaintiff contends, that the fact that NFS utilized different size and color type on the Notice indicates an intent not to comply with the FDCPA. However, this Court finds it equally plausible that there was no intentional noncompliance—even the smallest and lightest type is clearly legible according to several copies of the Notice provided to this Court by the plaintiff and the notifi-

cation of debt, arguably, is clearly understandable.

Therefore, this Court finds an award of $250.00 statutory damages appropriate under the facts of this case.

## B. CIV–91–51S

■ In CIV–91–51S the plaintiff alleges seven separate violations of five provisions of the FDCPA stemming from two Notices mailed by Lanocha to the plaintiff on February 2, 1990 and October 5, 1990. (CIV–91–51S, Motion For Default Judgment, exhs. C and D). Specifically, the plaintiff alleges that Lanocha has violated: 1) 15 U.S.C. § 1692g (insufficient debt validation notification) *and* statement that plaintiff pay debt in full to avoid "direct collection action" [3]; 2) 15 U.S.C. § 1692e(10) (use of false representations or deception); 3) 15 U.S.C. § 1692e(5) (threat to take legal action not actually intended to be taken) [4]; 4) 15 U.S.C. § 1692e(4) (false implication of asset attachment); and 5) 15 U.S.C. § 1692e(2)(A) (false representation as to character, amount of legal status of debt).

The plaintiff seeks additional damages of $7,000.00 or, just as in CIV–90–1185S, $1,000.00 per each alleged violation.

However, as discussed above in the context of CIV–90–1185S, § 1692k authorizes a maximum recovery of $1,000.00 statutory damages per lawsuit. Therefore, plaintiff's maximum recovery of additional damages in CIV–91–51S cannot exceed $1,000.00.

In deciding the amount of plaintiff's additional damages, this Court, as discussed above, considers *inter alia,* the frequency and persistence of noncompliance by Lanocha, the nature of the noncompliance and the extent to which Lanocha intended noncompliance.

As in CIV–90–1185S, plaintiff argues that Lanocha's violations "... are apparently intentional. [Lanocha] knew of the requirement to include the debt validation notice ... and debt disclosure ... and they were included, but in a meaningless man-

ner." (CIV–91–51S, Motion For Default Judgment, ¶ 24).

Although this Court concludes that there is insufficient evidence before it to indicate that Lanocha's violations were intentionally designed to deceive the plaintiff, it awards the plaintiff $525.00 in additional damages. Lanocha utilized extremely small print for mandated portions of the Notice (smaller than did NFS in CIV–90–1185S) while utilizing larger print for surplusage, printed much of the mandated information on the reverse side and sent two such collection notices.

## III. *Plaintiff's Entitlement To Actual Damages*

As noted above, on October 17, 1991, this Court held a hearing in CIV–90–1185S with respect to plaintiff's actual damages. At the hearing, plaintiff testified that her actual damages for which she seeks relief in CIV–90–1185S stemmed not only from the conduct of NFS, the defendant in CIV–90–1185S, but from her receipt of several notices relating to several debts sought by several different debt collectors. One of these "other" debt collectors is Lanocha, against whom plaintiff filed a separate lawsuit, CIV–91–51S. Plaintiff's counsel has confirmed that, to her knowledge, the plaintiff has filed no other lawsuits relating to her claimed actual damages. Therefore, this Court considers the relative conduct of NFS and Lanocha in determining the amount of plaintiff's actual damages, if any, and apportionment of such damages should this Court find the plaintiff to have suffered them as a result of the defendants' conduct.

Although the plaintiff's Complaints do not specify the actual damages which she claims to have suffered, in her affidavit submitted in CIV–90–1185S the plaintiff claims that the Notice sent by NFS "... caused [her] many physical and emotional problems." (CIV–90–1185S, Plaintiff's Affidavit ¶ 4). According to her affidavit, upon receiving NFS' Notice, the plaintiff's

---

**3.** Thus the plaintiff alleges two separate violations of 15 U.S.C. § 1692g.

**4.** Plaintiff alleges two identical violations of 15 U.S.C. § 1692e(5), one per each Notice.

"... immediate reaction ... was to cry" and that, subsequently, she suffered "... breathlessness, hyperventilation, nervousness, worrying, irritability, loss of concentration, weight gain, headaches, nausea, fear and depression." As a result, the plaintiff visited her general physician who prescribed Prozac for her depression. Plaintiff also claims that, as a result of her depression, she became afraid that she would lose wages or property because of the claimed debt and that she neglected her household responsibilities. (CIV–90–1185S, Plaintiff's Affidavit ¶¶ 4–6, 9–10).

The plaintiff did not submit an affidavit in CIV–91–51S.

As noted above, at the October 17, 1991 hearing, the plaintiff testified that she actually received several debt collection notices relating to several different debts by several debt collectors, including the defendants NFS and Lanocha, but also including other debt collectors. As noted above, NFS sent plaintiff a single Notice on the $18.94 debt owed American Family Publisher. Lanocha sent plaintiff two additional Notices on the same $18.94 debt owed American Family Publisher. Plaintiff's hearing testimony was the first time this Court was notified of the fact that plaintiff's claimed physical and emotional symptoms in CIV–90–1185S stemmed in part from the collection efforts of other entities, including Lanocha; *and* entities not parties to either of these lawsuits, with regard to other alleged debts.

At the October 17 hearing the plaintiff testified that, as a result of receiving the Notices, she did not associate with her friends and did not go out of the house, that she became anxious, nervous and worried and was embarrassed in front of others who might know of the debt collection efforts. For her depression, plaintiff testified that her physician proscribed Prozac for a period of three months, during which she took one Prozac dose (one pill) daily. Also, however, the plaintiff testified that during her depression, she continued to work, was able to sleep and to eat.

■ Initially, this Court agrees with the plaintiff that her right to recovery of actual damages under the FDCPA, predicated on claimed emotional distress, remains independent of her right, if any, to recover damages for emotional distress under state law. *See Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 186–189 (D.Del.1991); *Crossley v. Lieberman,* 90 B.R. 682, 691–692 (E.D.Pa.1988), *aff'd,* 868 F.2d 566 (3d Cir.1989).

■ However, several factors lead this Court to find that the plaintiff's actual damages in these cases are minimal. First, as discussed above, plaintiff's hearing testimony demonstrates that a portion of the plaintiff's claimed emotional and physical distress is attributable to the collection efforts of other agencies on other debts besides the efforts of NFS and Lanocha to collect the $18.94 on behalf of American Family Publisher. The plaintiff simply failed to show, and therefore this Court cannot determine, how much of plaintiff's claimed damages are attributable to the defendants' conduct as opposed to the conduct of others.

■ Second, although this Court has acknowledged that the plaintiff need not make the heightened showing of emotional distress under state law in order to recover actual damages under the FDCPA, this Court also believes that there must be some reasonable nexus between the nature of the defendants' conduct and the emotional and physical distress which the plaintiff claims to have suffered. Here, this Court finds any nexus between the defendants' conduct and the totality of plaintiff's claimed reaction to be strained at best. The record before this Court shows that NFS sent the plaintiff one collection Notice referencing an $18.94 debt. Lanocha sent the plaintiff two other similar Notices on the same debt. The Notices were sent months apart. Again, plaintiff's testimony indicates that several collection agencies were "after" her, at least some of which were collecting legitimate debts. Therefore the defendants' Notices were not plaintiff's sole encounter with debt collection agencies. Moreover, the debt sought to be collected by the defendants was reasonably and fairly viewed, not so substan-

tial as to be of crisis proportion. Although plaintiff's affidavit and testimony show that plaintiff had suffered from hyperventilation, irritability, nervousness and anxiety when she received the Notices, she also testified that she was able to work, sleep and eat and was physically "alright."

Therefore, acknowledging that plaintiff suffered some quantum of mental or physical distress stemming in part from the conduct of these defendants, this Court awards the plaintiff $100.00 actual damages.

Moreover, this Court finds that the payment of damages should be apportioned amongst these defendants according to this Court's view of the defendants' culpability based on the number of collection notices they sent. Therefore, this Court concludes that NFS pay $33.33 in actual damages and the Lanocha pay $66.67 in actual damages.

## IV. *Attorneys' Fees And Costs*

■ In these cases, 15 U.S.C. § 1692k(a)(3) mandates that the defendants pay the plaintiff's reasonable attorneys' fees and costs of bringing the lawsuits.

With respect to attorneys' fees, in CIV–90–1185S plaintiff's counsel seeks $1,136.00, representing roughly 9.5 billable hours work at the rate of $120.00 per hour—although according to her two affidavits with respect to fees in CIV–90–1185S, plaintiff's counsel actually spent a total of 11.8 billable hours on that case.[5]

The plaintiff's counsel bases her hourly rate on her "... practice and expertise in the field of consumer protection law" and according to an approximate average billing rate at two of Buffalo's larger law firms. (CIV–90–1185S, Wiseman Affidavit June 14, 1991, ¶¶ 33–34).

This Court notes that in other FDCPA cases in this district, one recently, a rate of $90.00 per hour has been awarded to plaintiff's counsel. *See Read v. Amana Collection Services,* CIV–90–110E, 1991 WL 165033 (W.D.N.Y. August 12, 1991).

This Court finds $95.00 per hour to be a reasonable billing rate for this type of case. Therefore, in CIV–90–1185S this Court awards attorneys' fees in the amount of $1102.00, representing 11.6 hours at a billing rate of $95.00 per hour.

This Court shall also order that NFS pay the plaintiff an additional $185.00, representing the costs of bringing CIV–90–1185S.

In CIV–91–51S plaintiff's counsel billed 5.1 hours, including time spent appearing at the October 17 hearing (which this Court has apportioned equally amongst Lanocha and NFS). Therefore, in CIV–91–51S this Court awards attorneys' fees in the amount of $484.50, representing 5.1 hours at a billing rate of $95.00 per hour.

In CIV–91–51S, this Court shall also order that Lanocha pay the plaintiff an additional $185.00 representing the costs of bringing CIV–91–51S.

## ORDER

IT HEREBY IS ORDERED, that this Court GRANTS the motions of the plaintiff for a default judgment in CIV–90–1185S and CIV–91–51S pursuant to Fed.R.Civ.P. 55(b).

### A. CIV–90–1185S

FURTHER, that in CIV–90–1185S this Court directs that defendant pay the plaintiff the sum of $250.00 in additional damages.

FURTHER, that in CIV–90–1185S this Court directs that defendant pay the plaintiff the sum of $33.33 in actual damages.

---

**5.** In her supplemental affidavit with respect to attorneys' fees in CIV–90–1185S, plaintiff's counsel states that, in addition to the 5.3 hours already spent on this case, she spent an additional 6.5 hours attending the hearing on damages *and* preparing a legal memorandum at the direction of this Court. Because the hearing addressed plaintiff's actual damages stemming from the conduct of NFS and Lanocha, this Court concludes that both defendants should equally pay plaintiff's counsel's fees for her appearance at the hearing. Therefore, of the one-half hour time plaintiff's counsel spent attending the hearing, each defendant shall be liable to pay for .25 of an hour. Therefore, in CIV–90–1185S this Court finds that plaintiff's counsel billed 11.6 hours (11.8 hours minus .25 hours rounded upward).

FURTHER, that in CIV–90–1185S this Court directs that the defendant pay the plaintiff's attorneys' fees in the sum of $1102.00.

FURTHER, that in CIV–90–1185S this Court directs that the defendant pay the plaintiff $185.00, representing the costs of bringing CIV–90–1185S.

FURTHER, that this Court directs the Clerk of the United States District Court for the Western District of New York to enter final judgment for the plaintiff in CIV–90–1185S accordance with this opinion.

### B. CIV–91–51S

FURTHER, that in CIV–91–51S this Court directs that defendant pay the plaintiff the sum of $525.00 in additional damages.

FURTHER, that in CIV–91–51S this Court directs that defendant pay the plaintiff the sum of $66.67 in actual damages.

FURTHER, that in CIV–91–51S this Court directs that the defendant pay the plaintiff's attorneys' fees in the sum of $484.50.

FURTHER, that in CIV–91–51S this Court directs that Lanocha pay the plaintiff $185.00, representing the costs of bringing CIV–91–51S.

FURTHER, that this Court directs the Clerk of the United States District Court for the Western District of New York to enter final judgment for the plaintiff in CIV–91–51S accordance with this opinion.

SO ORDERED.