Ronald THOMAS

v.

**PIERCE, HAMILTON, AND STERN, INC.; Charles "Chuck" Wynn; and Allen Ward.**

Civil No. 1:96–cv–1616–WCO.

United States District Court, N.D. Georgia, Atlanta Division.

May 16, 1997.

Karl Gregory Faerber, Faerber Law Firm, Alpharetta, GA, for Plaintiff.

Bryan F. Dorsey, Office of Thomas E. McCarter, Atlanta, GA, for Defendants.

*ORDER*

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of whether punitive damages are recoverable under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Argument was heard from counsel on April 28, 1997, in United States District Court in Atlanta, Georgia, and counsel have since submitted supplemental briefs regarding this issue. As the matter is now ripe for review, the court will proceed with resolving this question.

**The Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act ("FDCPA") was enacted by Congress in an effort to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent [s]tate action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (West, 1997). In establishing a statutory framework to achieve those purposes, Congress created a comprehensive scheme for determining the damages recoverable by aggrieved consumers. These damage awards are provided under 15 U.S.C. § 1692k and include actual damages, reasonable attorney's fees, and a discretionary statutory damage award not to exceed $1,000:

## § 1692k.  Civil Liability

### Amount of Damages

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

    (1) any actual damage sustained by such person as a result of such failure;

    (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

    (B) in the case of a class action, (I) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith, and for the purposes of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a).  In regard to the statutory damage award of section 1692k(a)(2)(A), Congress also included factors to be considered by the court in determining the amount of liability.  These factors include, the frequency and persistence of noncompliance by the debt collector; the nature of the noncompliance; and the intent of the debt collector.  15 U.S.C. § 1692k(b). The issue before the court is whether the discretionary statutory damage award of section 1692k(a)(2)(A) precludes the availability of a separate punitive damage award.

Plaintiff argues that because the FDCPA is silent as to punitive damages, this court may impose a punitive damage award pursuant to the court's inherent federal common law authority.  *See Keene v. International Union of Operating Engineers, Local* 264, 569 F.2d 1375 (5th Cir.1978) (finding punitive damages recoverable under the Labor Management Reporting and Disclosure Act although not expressly authorized by Congress);[1] *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1132 n. 44 (7th Cir.1978) (finding punitive damages recoverable under the Magnuson–Moss Act). Plaintiff is essentially using a "dog that didn't bark" theory,[2] arguing that because the FDCPA and its legislative history fail to explicitly prohibit punitive damages, *ipso facto* they are available because they further the FDCPA's stated purpose.  In pursuing this line of argument, plaintiff argues that because the FDCPA fails to mention an intent to "punish and deter" FDCPA violators and fails to discuss common law principles generally used in the application of punitive damages, punitive damages should be allowed under the FDCPA.  Moreover, plaintiff claims that the absence of language requiring a showing of malice or recklessness or a consideration of the wrongdoer's resources when considering the amount of the award indicates that Congress did not intend to preclude punitive damages.  Furthermore, plaintiff suggests that $1,000 is not a sufficient deterrent, assuming that the $1,000 statutory damage award is meant to be a deterrent, because $1,000 does not address the relative economic advantage held by debt collectors as debt collectors view a possible $1,000 penalty as a "cost of doing business."

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2. A "dog that didn't bark" analogy, so named after the deciding clue in a Sherlock Holmes mystery, is a theory which attempts to prove its own validity based upon the absence of an expected occurrence.  In *Silver Blaze,* Sherlock Holmes deduces from a dog's failure to bark that it was the trainer who attempted to harm a valuable horse.  Sir Arthur Conan Doyle, *Silver Blaze,* in THE COMPLETE SHERLOCK HOLMES 383, 400 (1953).  It is now relatively common to refer to 'the dog that didn't bark' as a way of describing the inferences that flow from the failure of the expected to happen.  Frederick Schauer, *Liars, Novelists,* and *the Law of Defamation,* 51 Brook. L.Rev. 233, 241 (Winter, 1985); *see also Chisom v. Roemer,* 501 U.S. 380, 395, n. 23, 111 S.Ct. 2354, 2364, n. 23, 115 L.Ed.2d 348 (1991).

In addition, plaintiff points to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n(2), and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 1691e(b), both of which, along with the FDCPA, are subchapters falling under the general rubric of the Consumer Credit Protection Act. 15 U.S.C. §§ 1601–1693p. Both the FCRA and the ECOA expressly use the term "punitive" when addressing damages that are in excess of actual damages. *See* 15 U.S.C. § 1681n(2); 15 U.S.C. § 1691e(b). Plaintiff asserts that since the FDCPA omits the express use of the term "punitive damages" as used in the FCRA and ECOA, Congress did not intend to preclude or limit punitive damages in the FDCPA arena by use of the term "additional damages."

## Analysis

■ In attempting to determine a statute's meaning, including the scope of available remedies, courts ordinarily have relied upon the plain language of the statute and applied the relevant canons of statutory interpretation. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)("[T]he starting point for interpreting a statute is the language of the statute itself."); *see, e.g., In re City of Mobile,* 75 F.3d 605, 610–611 (11th Cir.1996)(summarizing the general principles of statutory construction). If the plain language of the statute proves ambiguous, courts have also turned to the statute's legislative history in order to divine congressional intent. *Crandon v. United States,* 494 U.S. 152, 153, 110 S.Ct. 997, 998–99, 108 L.Ed.2d 132 (1990) (court will look not only to the language of the statute but also to the design of the statute as a whole and to its object and policy); *United States v. Castro,* 829 F.2d 1038, 1049 (11th Cir.1987) ("Our objective when interpreting a statute is to determine the drafters' intent."), *modi-*

fied on other grounds, 837 F.2d 441 (11th Cir.1988); *see generally,* Symposium, *A Reevaluation of the Canons of Statutory Interpretation,* 45 Vand. L.Rev. 529 (April, 1992)(discussing current theories of statutory interpretation).

The court begins its analysis with the statutory text of the FDCPA. The language of the statute is plain and unambiguous. The statutory scheme clearly contemplates that actual damages are recoverable and that 'additional damages' may not exceed $1,000. 15 U.S.C. § 1692k(a)(2)(A) The only reasonable reading of "additional," considering the ordinary meaning of the term,[3] is that "additional damages" includes punitive damages and that the discretionary statutory award is meant to preclude a separate award of punitive damages.[4] See *Escondido Mut. Water Co. v. La Jolla Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (finding since it is "generally assumed" that Congress expresses its purposes through the ordinary meaning of the words it chooses, "[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive") (citing *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983)).

Furthermore, the various factors that Congress instructs courts to consider when imposing the statutory damage award address the very factors a court would address when considering punitive damages. Section 1692k(b) requires the court to consider the debt collector's conduct in light of the consumers' noncompliance. 15 U.S.C. § 1692k(b). By making the debt collector's conduct the bellwether for imposition of a statutory damage award, Congress obviously intended the statutory award to "punish and deter" wrongdoers and prevent abusive conduct in the future.

---

**3.** "Additional" is defined by Webster's as "existing or coming by way of addition: ADDED, FURTHER" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981).

**4.** The cases cited by plaintiff in support of finding punitive damages recoverable in the face of legislative silence contemplated language considerably more vague than the language considered by the court in the case at bar. In *General*

*Motors Corp.,* the Fifth Circuit considered the Consumer Product Warranties Act, which uses the phrase "damages and other legal and equitable relief" without any further clarification. 15 U.S.C. § 2310(d)(1). In *Keene,* the Seventh Circuit considered the Labor Management Reporting and Disclosure Act, which does not refer to damages and simply states that "any person ... may bring a civil action." 29 U.S.C. § 412.

The court is unpersuaded by plaintiff's argument that the use of the term "punitive" in both the FCRA, which allows punitive damages, and the ECOA, which limits punitive damages to $10,000, suggests that punitive damages should be allowed under the FDCPA. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion of exclusion." *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983)) (internal quotation marks omitted). Although the language referred to here is not language found within the same *statute,* the FCRA, ECOA, and the FDCPA are subchapters found under the same *chapter* in the United States Code: the Consumer Protection Act. Accordingly, the same logic holds: the court will presume that Congress acted intentionally in using the more encompassing term of "additional" rather than the more precise term of "punitive."

■ Furthermore, Congress' use of the term "additional" is internally consistent within the overarching scope of the Consumer Protection Act. As noted above, the purpose of the FDCPA is to protect consumers from abusive debt collectors while not overburdening legitimate efforts to collect outstanding debts. 15 U.S.C. § 1692(e). The reasonable conclusion is that Congress decided that the $1,000 statutory award for reprehensible conduct represents a balance between the competing interests of the two and presents a reasonable deterrent against overzealous debt collectors. In support of this reading, the court must limit the statutory award in class action suits to the lesser of $500,000 or 1 per centum of the net worth of the debt collector, clearly indicating a congressional desire to limit punitive damages. 15 U.S.C. § 1692k(a)(2)(B). Presumably, Congress decided that punitive damages should play a more prominent role in the FRCA and ECOA. Moreover, it is not for the court to decide, as plaintiff essentially urges, whether the difference between the more generous policy of the FRCA and ECOA and the more parsimonious policy of the FDCPA is due to Congressional "forgetfulness," resulting in Congress' omitting the "punitive damage" term because it assumed that punitive damages would be available. *West Virginia University Hospitals v. Casey,* 499 U.S. 83, 101, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991)("In such circumstances, the attribution of forgetfulness rests in reality upon the judge's assessment that the later statute contains the better disposition. But that is not for judges to prescribe."); *see also Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) ("To supply omissions transcends the judicial function.").

It is hard to imagine that Congress intended consumers to have an extra remedy of "punitive damages" in addition to a limited statutory damage award predicated upon the behavior of the debt collector. First, such a reading ignores the comprehensive damage scheme created by Congress. *See United States v. Grigsby,* 111 F.3d 806, 829 (11th Cir.1997) ("[A statutory term's] definition must be read in context with the overall statutory scheme of which it is a part and not separate or in conflict with the rest of the legislation."). Second, construing "additional damages" to exclude punitive damages defies the well worn Latin maxim *inclusio unius est exclusio alterius.*[5] Nevertheless, the court will look to the legislative history to try to divine if this was Congress' intent. *See Rector, Etc, of Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892) ("It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of the makers.").

The legislative history of the FDCPA leaves little if any doubt that any punitive damage award sought under the FDCPA is limited to $1,000. The Senate Report on the FDCPA reflects an interest by Congress "to protect consumers from a host of unfair, harassing and deceptive debt collection practices without imposing unnecessary restric-

---

**5.** "The inclusion of one is the exclusion of anoth-     er." BLACK'S LAW DICTIONARY 763 (6th ed. 1990).

tions on ethical debt collectors," including "nuisance suits." S.Rep. No. 382, 95th Cong., 1st Sess. 1–2, 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1700. As to civil liability, the language found in the legislative history virtually mirrors the statutory text:

> A debt collector who violates the act is liable for any actual damages he caused as well as any additional damages the court deems appropriate, not exceeding $1,000. In assessing damages, the court must take into account the nature of the violation, the degree of willfulness, and the debt collector's persistence. A debt collector has no liability, however, if he violates the act in any manner, including with regard to the act's coverage, when such violation is unintentional and occurred despite procedures designed to avoid such violations ...

> \* \* \* \* \* \*

> ... [i]n order to protect debt collectors from nuisance lawsuits, if the court finds that an action was brought by a consumer in bad faith and for harassment, the court may award the debt collector reasonable attorney's fees and costs.

S.Rep. No. 382, 95th Cong., 1st Sess. at 5, *reprinted in* 1977 U.S.C.C.A.N. at 1700. Arguably, qualifying "any additional damages" with the phrase "the court deems appropriate" strengthens the argument that "additional damages" includes punitive damages because it addresses the open-ended discretion given to the district court in determining whether the statutory damage award should be imposed.[6] Surely, if punitive damages were meant to be allowed, Congress would not have curtailed a district court's discretion as to the amount of damages while acknowledging that a full panoply of damages are at the court's disposal as "the court deems appropriate."

The Senate Report also states: "[i]n addition to the[ ] specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S.Rep. No. 382, 95th Cong., 1st Sess. at 4, *reprinted in* 1977 U.S.C.C.A.N. at 1698. Again, as discussed above, Congress' concern with "proscribing ... improper conduct" indicates that the statutory damage award is punitive in nature. Accordingly, in the case *sub judice,* the court finds that "resort to the legislative history ... merely confirms that Congress intended the statute to mean exactly what the plain language says." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 574, 102 S.Ct. 3245, 3251–52, 73 L.Ed.2d 973 (1982); *see Rodgers v. Bowen,* 790 F.2d 1550, 1551 (11th Cir.1986) ("One of the basic canons of statutory interpretation is that '[a]bsent a clearly expressed legislative intention to the contrary, [the language of the statute] must ordinarily be regarded as conclusive.' ") (citation omitted).

As to plaintiff's "cost of doing business" argument, plaintiff's contention that the $1,000 statutory damage award is not sufficient to deter debt collectors is directed at the wrong governmental branch. "The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this [c]ourt. Congress may amend the statute; we may not." *Griffin,* 458 U.S. at 576, 102 S.Ct. at 3253. The plain language of the statute and the legislative history indicate that Congress considered the amount to be awarded as a punitive measure and chose $1,000 in an effort to balance the need for protection of consumers and a desire not to overly burden debt collectors by subjecting them to "nuisance suits." Any grievance plaintiff has with the amount of the statutory damage award should be addressed to Congress.[7]

---

6. Significantly, it appears that the final version of the bill dropped a mandatory $100 minimum civil penalty when a violation of the Act had been established. S.Rep. No. 382, 95th Cong., 1st Sess. at 9, *reprinted in* 1977 U.S.C.C.A.N. at 1703. The elimination of this requirement seems to have been a compromise enacted in an effort to avoid "the type of nuisance suits so prevalent under the Truth in Lending Act." *Id.* Similarly, the $1,000 cap on statutory damages was most likely a compromise enacted to avoid nuisance suits.

7. The court notes, however, that some courts have allowed punitive damages to be sought on a pendent state law claim on independent torts arising out of the debt collector's conduct in the collection of the debt. *See, e.g., Miele v. Sid*

Finally, inferring that Congress intended to allow punitive damages under the FDCPA would create an absurd and anomalous result. If unlimited punitive damages were allowed under the FDCPA, a statutory damage award of $1,000 would be rendered superfluous and vestigial because an aggrieved consumer could simply "end-around" the $1,000 limit set by section 1692k(a)(2)(A) by seeking unlimited punitive damages. "Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions within the same enactment." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (*citing Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189–90, 100 L.Ed.2d 836 (1988)).

This court has previously visited the issue of expanding the scope of damages allowed under 15 U.S.C. § 1692k(a)(2)(A). In *Harper v. Better Business Services, Inc.* 768 F.Supp. 817 (N.D.Ga., O'Kelley, C.J. 1991), *aff'd*, 961 F.2d 1561 (11th Cir.1992), this court held that the $1,000 maximum statutory damage award applies to the action as a whole, and not to every single violation of the FDCPA alleged within the complaint. *Harper*, 768 F.Supp. at 818. In affirming this court's decision, the Eleventh Circuit stated:

> We acknowledge Harper's attempt to influence our construction of the FDCPA by utilizing the statute's legislative history and by advancing various policy arguments. But when the language of a statute is so clear, that text must control unless there is a clearly expressed legislative intent to the contrary.

*Harper v. Better Business Services, Inc.*, 961 F.2d 1561, 1563 (11th Cir.1992) (citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Prod. Safety Comm'n*, 447 U.S. at 108, 100 S.Ct. at 2056.). The same type of analysis dictates the outcome in this case.

*Bailey, Inc.*, 192 B.R. 611, 614 (S.D.N.Y.1996) (allowing punitive damages for state tort claims joined with FDCPA claim); *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F.Supp. 543, 549

**Conclusion**

Based upon the foregoing discussion, the court hereby finds that punitive damages in excess of $1,000.00 are not recoverable under the Fair Debt Collection Practices Act.

(D.Conn.1994) (considering and denying punitive damage claim based upon state tort claim of conversion joined with FDCPA claim).