Filed 5/12/25  Velocity Investments v. Canul CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VELOCITY INVESTMENTS, LLC, et al., <br><br> Plaintiffs and Respondents. <br><br> v. <br><br> MARIA ANTONIA CANUL, <br><br> Defendant and Appellant. | H051695 <br> (Santa Clara County <br> Super. Ct. No. 16CV300096) |
| VELOCITY INVESTMENTS, LLC, et al., <br><br> Plaintiffs and Respondents. <br><br> v. <br><br> EVA MARCLO PASCUAL, <br><br> Defendant and Appellant. | H051696 <br> (Santa Clara County <br> Super. Ct. No. 18CV338986) |

The Fair Debt Buying Practices Act (Debt Buyers Act) regulates "debt buyers," that is, entities "regularly engaged in the business of purchasing consumer debt for collection purposes."  (Civ. Code, § 1788.50, subd. (a)(1).)  (Subsequent undesignated statutory references are to the Civil Code.)  Among other things, the Act restricts how debt buyers may communicate with consumers (§ 1788.52) and how they may sue to

collect consumer debts (§ 1788.58). If a debt buyer violates these requirements, the Debt Buyer Act imposes liability "equal to the sum of . . . [a]ny actual damages sustained" and "[s]tatutory damages" allowed by the trial court. (§ 1788.62, subd. (a)(1)-(2).)

A prior decision of this court considered whether consumers must show concrete harm in order to recover statutory damages for violation of the Debt Buyers Act. Based on the text and legislative history of the Act, the decision concluded that such harm is not required and that the Debt Buyers Act grants standing to sue for statutory damages whenever a debt buyer violates the Act. (*Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030 (*Chai*).)

The two cases considered in this opinion raise the same issue. In both, Velocity Investments, LLC (Velocity) bought consumer debts and sued the debtors, who filed cross-claims claiming violations of the Debt Buyer Act and seeking statutory damages. In nearly identically worded orders, the trial court granted summary judgment in both cases on the ground that cross-claimants failed to show a concrete injury and therefore lacked standing to sue for statutory damages. The court also denied cross-claimants' motions for summary judgment as moot.

Appellants Maria Antonia Canul and Eva Marcelo Pascual challenge the trial court's standing rulings and argue that we should follow *Chai* in holding that the Debt Buyers Act does not require consumers seeking statutory damages to show harm or injury. Canul and Pascual also argue that they are entitled to summary adjudication on their claims that Velocity violated the Debt Buyers Act in suing them. As explained below, we agree on both points.

We therefore vacate the judgments in both cases on appeal and remand to the trial court with instructions to grant summary adjudication in favor of Canul and Pascual and to conduct additional proceedings consistent with this opinion.

# I. BACKGROUND

Both Canul and Pascual took out loans on online credit platforms, which they failed to repay, and after the loans were charged off, Velocity purchased them and sued to recover the unpaid balance in Santa Clara County Superior Court. Although the cases were not consolidated, the parties were represented by the same counsel in both cases, they submitted largely identical briefing, and the trial court issued largely identical orders granting Velocity summary judgment and denying the motions of Canul and Pascual. We address the *Canul* case first and then *Pascual*.

## A. The *Canul* Case

### 1. The Loan

On May 29, 2012, Canul submitted a request for a $15,000 loan to the online credit platform operated by LendingClub Corporation (LendingClub). On this platform, members seeking to borrow money could post loan requests, and members seeking investments could commit funds for the requested loans, which would close if the commitments totaling at least 60 percent of the requested amount.

On May 29, 2012, Canul signed a loan agreement with WebBank, which issued the LendingClub loans. That same day WebBank provided a Truth in Lending Act (TILA) disclosure statement, which estimated that the annual interest rate on the requested loan would be 12.58 percent.

Canul received commitments totaling $14,400. Accordingly, on June 6, 2012, WebBank issued Canul a loan in that amount, and promissory notes to the investors were executed on Canul's behalf. The interest rate on the promissory notes, however, was 9.76 percent rather than the 12.58 percent indicated on the TILA disclosure statement provided the prior week.

Canul made over $10,000 in payments, but she stopped making payments in August 2014, leaving an unpaid balance of $4,617.82. In February 2015, LendingClub charged off Canul's loan.

3

### 2. *Velocity's Purchase of the Loan and Collection Efforts*

Velocity subsequently purchased Canul's loan, and in March 2015, it sent Canul a letter informing her of the purchase and that the current balance owed was $4,792.17.

### 3. *Pleadings*

In September 2016, Velocity sued Canul for the unpaid balance of her loan  In its complaint, Velocity alleged that it had complied with the Debt Buyers Act's communication requirements and attached a copy of the TILA disclosure statement given Canul on May 29, 2012.

Canul filed a cross-complaint, claiming that Velocity violated the Debt Buyers Act by not making a disclosure required by the Act and not attaching to the complaint her loan agreement.  Canul also sought certification of a class of persons against whom Velocity had filed similar complaints, which the trial court granted.

In August 2019, Velocity voluntarily dismissed its claims against Canul.

Later, Canul identified Velocity Portfolio Group, Inc. (VPGI) as a previously unnamed cross-defendant, and the parties stipulated for purposes of this case that VPGI is an alter ego of Velocity.  (In light of this stipulation, subsequent references to "Velocity" include VPGI.)  Canul also amended her cross-complaint to add, among other things, allegations that Velocity's complaint misidentified the charge-off creditor.

### 4. *Summary Judgment Motions*

The parties moved for summary judgment.  Velocity moved for summary judgment on two grounds:  (1) Canul lacked standing because she did not suffer any concrete harm, and (2) the violations of the Debt Buyers Act alleged by Canul were immaterial.  Canul sought summary judgment on the ground that the TILA disclosure statement attached to the complaint violated the Debt Buyers Act because it was neither her loan contract nor a document evidencing agreement to the loan.

The trial court granted Velocity's motion and denied Canul's motion as moot. Relying on *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671 (*Limon*), the court

4

held that Canul lacked standing because she had not suffered an injury in fact. Under California law, the court observed, plaintiffs suing for statutory violations generally must be " 'beneficially interested,' " which means they must suffer some concrete harm or injury in fact from the alleged violation. The court recognized that the Legislature may create exceptions and confer statutory standing absent concrete injury. However, focusing on the Debt Buyers Act's use of the word "damages," it concluded that the Debt Buyers Act does not create such an exception. In particular, the court reasoned that " 'the term damages connotes compensation for an injury' " and that, "[i]f the legislature had intended for the statutory damages provision of the [Debt Buyers Act] to function as a penalty, it would have so stated." Determining as well that Canul did not seek emotional distress or out-of-pocket damages and that she had waived any claim for attorney's fees, the trial court concluded that Canul had not suffered any concrete injury and lacked standing to sue for violations of the Debt Buyers Act.

### B. *Pascual*

#### 1. *The Loan*

Much like Canul, Pascual requested a loan from an online credit platform, this one operated by Prosper Funding LLC (Prosper). Like LendingClub's website, the Prosper website allowed individuals to request loans, and members seeking investments to commit funds for those loans, which would close if minimum funding amounts were reached.

On May 23, 2016, Pascual appears to have signed a borrower registration agreement with WebBank, which issued loans for Prosper as well as Lending Club. On the same day, WebBank provided a TILA disclosure statement, which estimated that the annual interest rate on Prosper's loan would be 23.51 percent.

On May 25, 2016, a loan, which was for $15,000, was issued, and the same day a promissory note was executed on Pascal's behalf. However, the interest rate on the

5

promissory note was 19.73 percent rather than the 23.51 percent indicated on the TILA disclosure statement.

Pascual paid off approximately $1,500 of the principal on her loan, with her last payment in November 2016. In March 2017, Prosper charged off Pascual's loan.

### 2. *Velocity's Purchase of the Loan and Collection Efforts*

Velocity subsequently purchased Pascual's loan, and in September 2017 a debt collector acting on behalf of Velocity sent Pascual a letter informing her of the purchase and that the current balance on her loan was $14,635.82.

### 3. *Pleadings*

In December 2018, Velocity sued Pascual for the unpaid balance of her loan. Much as in *Canul*, Velocity alleged that it had complied with the Debt Buyers Act's communication requirements and attached a copy of the TILA disclosure statement given Pascual on May 23, 2016.

Like Canul, Pascual filed a cross-complaint claiming that Velocity violated the Debt Buyers Act by not making required disclosures and not attaching her loan agreement to the complaint. Pascual also sought certification of a class, which the trial court granted.

Again, as in *Canul*, in August 2019, Velocity voluntarily dismissed its claims against Pascual. In addition, Pascual named VPGI as a defendant, which the parties stipulated was an alter ego of Velocity, and Pascual amended her cross-complaint to add, among other things, allegations that Velocity misidentified the charge-off creditor.

### 4. *Summary Judgment Motions*

In *Pascual* the parties moved for summary judgment, advancing largely the same arguments as in *Canul*. Using largely identical language as in the *Canul* order—which in fact was issued later—the trial court granted Velocity's motion for summary judgment on standing grounds and dismissed Pascual's motion as moot.

6

## C. Judgments

In *Pascual*, the trial court entered judgment in favor of Velocity on November 7, 2023. The following day, the trial court entered judgment in *Canul*. On December 19, 2023, Canul and Pascual both filed timely notices of appeal.

## II. ARGUMENT

### A. Standing

Canul and Pascual argue that the trial court erred in granting Velocity's motions for summary judgment. In particular, relying on this Court's decision in *Chai v. Velocity Investments, LLC*, *supra*, 108 Cal.App.5th 1030, Canul and Pascual argue that the trial court erred in requiring them to show concrete harm or injury in fact to establish standing to sue for statutory damages under the Debt Buyers Act. By contrast, Velocity argues that the trial court correctly required such harm and essentially invite us to depart from *Chai*. As Velocity has failed to offer any persuasive reason to do so, we decline the invitation.

We begin with the principles governing standing under California law. Unlike the federal Constitution, the California Constitution has no case-or-controversy requirement. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13.) Consequently, under California statutes, "standing is a matter of statutory interpretation" (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1120), which means that "[s]tanding requirements will vary from statute to statute based on the intent of the Legislature and the purpose for which the particular statute was enacted." (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385.) Normally, to ensure that relevant facts and issues are adequately presented, California statutes require claimants to have suffered or be about to suffer concrete harm or injury. (*Pacific Legal Foundation v. California Coastal Comm.* (1982) 33 Cal.3d 158, 169-172; see also *Muha v. Experian Information Solutions, Inc.* 2024) 106 Cal.App.5th 199, 208 (*Muha*) ["[A]s a general rule, a plaintiff must allege that he or she suffered a concrete 'injury,' as that term

7

is used in Article III standing jurisprudence, to sue in state court."]; *Limon*, *supra*, 84 Cal.App.5th at pp. 696-698.) However, "the Legislature may authorize public interest lawsuits by a plaintiff even if that plaintiff has not been injured by the claimed violation." (*Limon*, *supra*, 84 Cal.App.5th at pp. 693-694; *see also Muha*, at p. 208 ["The general rule that a concrete injury is required before a plaintiff may bring a claim in state court may be modified by the Legislature."].)

Although many statutes authorize claims by consumers injured or harmed by statutory violations (see, e.g., Civ. Code, § 1789.21, subd. (a) [authorizing actions by "[a]ny consumer injured by violation of this title"]; *id*. § 1789.35, subd. (g) [authorizing actions by "[a]ny person who is injured by any violation of this section"]; § 1789.90.54, subd. (a) [authorizing actions by "an individual who has been harmed by a violation of this title"], the Debt Buyers Act does not expressly require claimants to be injured or harmed. Nor, as the trial court recognized, does the Act expressly provide for penalties.

Instead, in individual actions, the Debt Buyers Act imposes liability equal to the "sum of . . . [a]ny actual damages" and "[s]tatutory damages" allowed by the trial court: "In the case of an action brought by an individual or individuals, a debt buyer that violates any provision of this title with respect to any person shall be liable to that person in an amount equal to the sum of the following: [¶] (1) Any actual damages sustained by that person as a result of the violation, including, but not limited, to the amount of any judgment obtained by the debt buyer as a result of a time-barred suit to collect a debt from that person. [¶] (2) Statutory damages in an amount as any court may allow, which shall not be less than one hundred ($100) nor greater than one thousand dollars ($1,000)." (§ 1788.62, subd. (a)(1)-(2).) In addition, if a class action is brought and a pattern and practice of violations is shown, "the court may award additional damages to the class in an amount not to exceed the lesser of five hundred thousand dollars ($500,000) or 1 percent of the net worth of that buyer." (§ 1788.62, subd. (b).)

Analyzing these provisions, *Chai* concluded that "nothing in the [Debt Buyers Act] suggests that any injury beyond noncompliance is required to impose civil liability." (*Chai*, *supra*, 103 Cal.App.5th at p. 1040.) Under the Debt Buyers Act, *Chai* observed, statutory damages are one of three types of damages: "actual damages," "statutory damages," and "additional damages." (*Chai*, 108 Cal.App.5th at pp. 1039-1040.) In addition, under the Act, statutory damages are separate from and independent of actual damages. The Debt Buyers Act imposes liability "equal to the sum" of "[a]ny actual damages sustained" and "[s]tatutory damages" allowed. (Civ. Code, § 1788.62, subd. (a)(1)-(2).) In other words, actual damages may be imposed only where there are "[a]ny," but statutory damages may be allowed in any case. Consequently, as *Chai* recognized, "actual damages only add to a debt buyer's liability under the Act," and statutory damages may be recovered even when there are no actual damages. (*Chai*, *supra*, Cal.App.5th at p. 1038.)

This conclusion is reinforced by the Debt Buyers Act's legislative history. As *Chai* recognized (*Chai*, 108 Cal.App.5th at p. 1038), the Legislative Counsel's Digest for the bill creating the Act stated that it "would prescribe penalties for each violation of the act." (Leg. Counsel's Dig., Sen. Bill No. 233 (2013-2014 Reg. Sess.).) As the Act's actual damages provision plainly does not prescribe penalties, the Legislative Counsel must have been referring to the other damages imposed by the Act. And, as the Legislative Counsel said that penalties are prescribed for "each" violation, not just for patterns and practices of violations, the Act's "statutory damages" must prescribe the penalties. Moreover, as " 'penalties . . . are intended to punish wrongdoers and to deter future misconduct,' " it is naturally assumed that the Legislature intended to make them available for statutory violations even if a violation " 'does not result in injury.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86.)

In concluding otherwise and requiring parties seeking statutory damages under the Debt Buyers Act to suffer concrete harm, the trial court did not consider that under the

9

Act statutory damages are independent of actual damages or that the Act awards actual damages in addition to rather than in lieu of statutory damages. Instead, the trial court focused on the Act's use of the word "damages." It noted that the term "damages" is ordinarily used to refer to compensation for injury and that, "if the Legislature had intended for statutory damages of the [Debt Buyers Act] to function as a penalty, it would have so stated." However, it is equally true that, if the Legislature had intended to limit statutory damages to those who suffered injury, it could have done so clearly by expressly limiting statutory damages to individuals injured or harmed—which, as noted earlier, many statutes do. Even more important, as just explained, in the legislative history the Legislature did say that it intended statutory damages under the Debt Buyers Act to function as a penalty.

In addition, the distinction that Velocity tries to draw between statutory damages and actual damages is based on a false assumption. In particular, Velocity assumes all damages, including statutory damages, are purely compensatory. In fact, like exemplary or punitive damages, in many cases "statutory damages serve to motivate compliance with the law and punish wrongdoers." (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1598; see also *Gonzalez v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1067 ["Statutory damages under the FDCPA are intended to 'deter violations even if [the] misconduct imposed no cost on the plaintiff.' "]; *Thomas v. Pierce, Hamilton, and Stern, Inc.* (N.D. Ga. 1997) 967 F.Supp. 507, 511 [under the FDCPA "the statutory damages award is punitive in nature"].)

Moreover, the Debt Buyers Act's statutory damages plainly have a punitive component. As explained above, the Act authorizes statutory damages in addition to any actual damages awarded, and it requires that statutory damages "not be less than one hundred dollars." (§ 1788.62, subd. (a)(2).) Thus, under the Debt Buyers Act, whenever actual damages are awarded, statutory damages are awarded above and beyond the actual damages needed to compensate the claimant for its injury and therefore function as

10

penalties rather than compensation. (Cf. *In re Trans Union Corp. Privacy Litig.* (N.D. Ill. 2002) 211 F.R.D. 328, 341 ["It is because the statutory damages [under the Truth in Lending Act] are allowed in addition to compensatory (actual) damages that they are considered a penalty."].)

Velocity also asserts that *Chai* conflated the concept of damages with the concept of injury and that, even where there are no actual damages, the Act should be interpreted to require an injury in fact. However, Velocity fails to identify any situations in which there are no actual damages but there is nonetheless an injury in fact. The federal courts have identified some intangible harms such as disclosure of private information, intrusion on exclusion, or deprivation of constitutional rights that may impose an injury in fact absent any actual damages. (See, e.g., *TransUnion*, *supra*, 141 S.Ct. at p. 2204.) But none of these previously recognized harms appears applicable to the Debt Buyers Act. As a consequence, if there are any situations in which violation of the Act may cause a concrete harm without also causing actual damages, they presumably are rare. Velocity offers no reason why the Legislature would have intended to make statutory damages available in such rare situations, but not in the much more frequent situations in which there are no actual damages or concrete harm. We therefore decline to impute to the Legislature the distinction asserted by Velocity.

*Limon v. Circle K Stores*, *supra*, 84 Cal.App.5th 671, does not help Velocity either. *Limon* held that under the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.) a plaintiff alleging an informational injury lacked standing because he failed to show any concrete harm or injury resulting from the failure to disclose the information at issue. (*Limon*, at p. 707.) Velocity argues that we should interpret the Debt Buyers Act similarly because the FCRA and the Act "include damages provisions that are substantially similar." In fact, the FCRA's damages provision is quite different from the Debt Buyers Act's provision. The Debt Buyers Act imposes liability "equal to the sum" of any actual damages *and* statutory damages (§ 1788.62, subd. (a)), which, as noted

11

above, means that actual damages "add to a debt buyer's liability under the Act" for statutory damages. (*Chai*, 108 Cal.App.5th at p. 1038.) By contrast, the FCRA imposes liability for "any actual damages sustained . . . *or* damages of not less than $100 and not more than $1,000." (15 U.S.C. § 1681n(a)(1), italics added.) Consequently, under the FCRA actual damages are available in lieu of statutory damages, and it makes sense to conclude that under the FCRA statutory damages are "designed to provide redress where damages are 'difficult or impossible to quantify or prove.' " (*Limon*, at p. 703.) As the Debt Buyers Act makes actual damages available in addition to statutory damages, statutory damages under the Act are not designed merely to provide redress where damages are difficult or impossible to establish, and the Act is best interpreted to make statutory damages available whether or not there are actual damages or concrete harm.

Accordingly, we conclude that the Debt Buyers Act does not require parties seeking statutory damages to suffer concrete harm and that both Canul and Pascual have standing to seek such statutory damages.

## B. Appellants' Failure-to-Attach Claims

Both Canul and Pascual moved for summary judgment on the ground that Velocity sued to collect a consumer debt without attaching to its complaints copies of their loan agreements or other documents evidencing their debts. The trial court denied appellants' motions as moot on the ground that they lacked standing. In addition to arguing that they have standing, appellants now argue that they are entitled to summary judgment on their failure-to-attach claims. We agree.

Under the Debt Buyers Act, a debt buyer suing to collect a consumer debt must attach to its complaint a copy of the contract or other document evidencing the consumer's agreement to the debt at issue. Under section 1788.52 of the Act, before communicating with a debtor in writing, a debt buyer must have access to "a copy of a contract or other document evidencing the debtor's agreement to the debt." (§ 1788.52, subd. (b) ["A debt buyer shall not make any written statement to a debtor in an attempt to

12

collect a consumer debt unless the debt buyer has access to a copy of a contract or other document evidencing the debtor's agreement to the debt."].)  In addition, if a debt buyer sues to collect a consumer debt, it must attach to the complaint a copy of the contract or other document evidencing agreement to the debt:  "In an action brought by a debt buyer on a consumer debt[,] . . . (b) [a] copy of the contract or other document evidencing the debt described in subdivision (b) of Section 1788.52 shall be attached to the complaint."  (§ 1788.58, subd. (a)-(b).)

Appellants presented undisputed evidence that Velocity violated this attachment requirement.  Velocity acknowledged that it was a "debt buyer" and that appellants both incurred a "consumer debt."  As a consequence, both the *Canul* and *Pascual* cases are actions "brought by a debt buyer on a consumer debt," and Velocity was required to attach to its complaint in each case a copy of the underlying contract or other document evidencing appellants' agreement to the debts at issue.  (§ 1788.58).  In *Canul*, Velocity did not attach a copy of Canul's loan agreement or even the promissory notes executed by LendingClub investors.  Instead, Velocity attached the text of the TILA disclosure statements that WebBank gave Canul.  However, creditors are required to provide TILA disclosure statements "*before* consummation of the transaction."  (12 C.F.R. § 1026.17(b), italics added.)  Indeed, the disclosure statement in *Canul* was provided on May 29, 2012, seven days before Canul's loan was approved and the promissory notes were executed.  In addition, the TILA disclosure statement listed a different interest rate than the promissory notes: 12.58 percent rather than 9.76 percent.  Thus, the disclosure statement failed to evidence Canul's agreement to the debt that Velocity sought to recover and therefore violates the Debt Buyers Act.

The attachment in *Pascual* similarly violates the Debt Buyers Act.  Pascual was given a TILA disclosure statement on May 23, 2016, two days before her loan was approved and the promissory note was executed.  In addition, like the disclosure statement given Canul, the TILA disclosure statement given Pascual listed a different

interest rate than the promissory note: 23.51 percent rather than 19.73 percent. Consequently, the TILA disclosure statement in *Pascual* does not evidence Pascual's agreement to the debt that Velocity sought to recover and therefore also violates the Debt Buyers Act.

In the trial court, Velocity argued that attaching the TILA disclosure statement rather than appellants' loan contracts was not a material violation or, alternatively, that it made a bona fide error.  (§ 1788.62. subd. (e) [creating affirmative defense for bona fide errors.)  Other than passing references to materiality, Velocity has not advanced these arguments on appeal.  (Cf. *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [requiring parties to "present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].)  Apparently assuming that it would prevail on standing, Velocity chose to not address appellants' motion for summary judgment at all in its briefing.  Accordingly, the issue of appellants' summary judgment motions "will be deemed submitted on appellant's brief," and we will not consider the arguments Velocity asserted in the trial court.  (*California Insurance Guarantee Assn. v. Workers' Compensation Appeals Bd*. (2005) 128 Cal.App.4th 307, 316, fn. 2; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, (The Rutter Guide 2024) ¶ 9:68 ["contention raised in opening brief to which respondent makes no reply in its brief 'will be deemed submitted on appellant's brief' "].)

We therefore conclude that appellants are entitled to summary adjudication on their claims that Velocity violated the Debt Buyers Act by not including in its complaints the attachments required by the Act, and we remand to the trial court to determine if appellants are entitled to statutory penalties for these violations.  (*People ex rel. Feuer v. Superior Court* (2015) 234 Cal.App.4th 1360, 1372-1376.)

### III.  DISPOSITION

In Case No. H051695, the judgment against appellant on her cross-claim is reversed, and the case is remanded to the trial court with directions to grant summary

14

adjudication in favor of appellant on her cross-claim for failure to attach documents to the complaint and to conduct further proceedings on remedies and other matters consistent with this opinion.

Similarly, in Case No. H051696, the judgment against appellant on her cross-claim is reversed, and the case is remanded to the trial court with directions to grant summary adjudication in favor of appellant on her cross-claim for failure to attach documents to the complaint and to conduct further proceedings on remedies and other matters consistent with this opinion.

Appellants are entitled to recover reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
BROMBERG, J.

WE CONCUR:


_____
GREENWOOD, P. J.


_____
DANNER, J.


_Velocity Investments, LLC, et al. v. Canul_
H051695
_Velocity Investments, LLC, et al. v. Pascual_
H051696