Filed 1/21/26

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| STACY KATE YEH et al., | B337904 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV42994) |
| v. | |
| BARRINGTON PACIFIC, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed in part, reversed in part, and remanded.

Stiller Law Firm and Ari J. Stiller; Victory Law Group and Erik S. Velie; Meta Law Group and Michael A. Shakouri for Plaintiffs and Appellants.

Brendan Patrick Maloney as Amicus Curiae in support of Plaintiffs and Appellants.

Brod Law Firm and Gregory J. Brod as Amicus Curiae in support of Plaintiffs and Appellants.

Litigation Advocacy Group and Glenn A. Murphy as Amicus Curiae in support of Plaintiffs and Appellants.

UC Berkeley Center for Consumer Law & Economic Justice, Seth E. Mermin, David S. Nahmias, and Léo Mandani for UC Berkeley Center for Consumer Law & Economic Justice, Center for California Homeowner Association Law, Community Legal Services in East Palo Alto, Consumers for Auto Reliability and Safety, Consumer Watchdog, East Bay Community Law Center, Housing and Economic Rights Advocates, Impact Fund, Katherine & George Alexander Community Law Center, Open Door Legal, Public Counsel, Public Justice, Public Law Center, and the University of San Diego School of Law Legal Clinics as Amici Curiae in support of Plaintiffs and Appellants.

Hinshaw & Culberston, Justin M. Penn and Sara E. Franks for Defendants and Respondents.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Paul A. Tyrell, and Meg E. Dawson for the Apartment Owners Association of California, Inc. as Amici Curiae in support of Defendants and Respondents.

———————

This appeal considers an issue of first impression in a California court:  Whether plaintiffs have standing to bring claims under California's Investigative Consumer Reporting Agencies Act (ICRAA) (Civ. Code,[1] § 1786 et seq.) even if they have not suffered any actual damages.  Barrington Pacific LLC, Shores Barrington, LLC, and DE Glendon, LLC (collectively,

---

[1]     All subsequent statutory references are to the Civil Code unless indicated otherwise.

Barrington) own apartment complexes in the Los Angeles area. As part of Barrington's rental application process, Barrington charged applicants screening fees and conducted background checks. More than 100 of these applicants, all of whom subsequently became tenants, sued Barrington, alleging that it violated ICRAA by failing to disclose the scope of its investigation and the identity of the reporting agencies, failing to notify plaintiffs of their rights to inspect the information on file with the relevant reporting agency, and failing to offer or provide plaintiffs copies of their reports. Three plaintiffs also sued Barrington for violating California's Unfair Competition Law (UCL) (Bus. & Prof. Code, §17200 et seq.) based on the alleged ICRAA violations. After consolidating the cases, the trial court granted Barrington's motion for summary judgment, concluding that plaintiffs lacked standing because they did not demonstrate they were harmed by the ICRAA violations.

Plaintiffs appeal, arguing that because ICRAA imposes a $10,000 minimum recovery for violations, they need show only a violation of their statutory rights to have standing. They also contend they have standing under the UCL because they paid for the investigative consumer reports but did not timely receive copies of the reports.

We conclude that plaintiffs have standing to pursue their ICRAA claims because ICRAA permits those who experience a violation of their rights to recover $10,000 without proving concrete injuries. However, because plaintiffs neither lost money nor property and have not shown any actual, concrete injury arising from the alleged violations, they fail to meet the UCL's standing requirements. We thus reverse summary adjudication

3

of the ICRAA claims, affirm summary adjudication of the UCL claims, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Plaintiffs' Rental Applications

Plaintiffs are or were tenants of rental properties owned by Barrington.  All three Barrington defendants share a management company and use the same procedures for evaluating potential tenants.  Each plaintiff applied to live at a Barrington property by completing Barrington's standard rental application and paying a nonrefundable $41.50 processing fee. Barrington used the fees to obtain plaintiffs' credit reports, eviction histories, and screening reports.  Each plaintiff signed an application authorizing Barrington to procure background information, "including, but not limited to, resident screening and credit checking."

### II.   Plaintiffs' ICRAA Complaints

Between November 9, 2020 to July 22, 2022, more than 100 plaintiffs filed individual complaints against Barrington alleging causes of action for violations of ICRAA.  Each complaint alleged that Barrington failed to:  (1) provide plaintiffs with a means of requesting a copy of their consumer reports, (2) disclose the identity of the consumer reporting agency that procured the report, (3) inform plaintiffs that investigative consumer reports would be prepared regarding their character, general reputation, personal characteristics, and mode of living, and (4) furnish or offer to furnish plaintiffs with copies of the reports.  Three plaintiffs also alleged a second cause of action under the UCL.

4

Barrington answered. The trial court subsequently related, transferred, and eventually consolidated plaintiffs' cases, with Yeh's matter designated as the lead action.

## III.  Barrington's Summary Judgment Motion

In August 2023, Barrington moved for summary judgment of the consolidated actions. Barrington contended that even if it failed to comply with ICRAA, no plaintiff demonstrated actual damages as a result. Barrington therefore asserted that plaintiffs lacked standing to pursue their ICRAA claims. Barrington primarily relied on *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 680 (*Limon*), which held that uninjured plaintiffs lack standing under the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) (FCRA) when their claims are based solely on a statutory violation and they cannot allege a concrete or particularized injury. *Limon* arrived at this conclusion by differentiating between statutory *damages*, which are intended to compensate plaintiffs for injuries, and statutory *penalties*, which are intended to punish and deter defendants and create standing for plaintiffs regardless of whether they suffered injury. (*Limon*, at pp. 701–703.) *Limon* determined that the FCRA authorizes recovery solely in the form of actual damages and was not intended to create standing through a statutory penalty. (*Ibid.*)

Applying *Limon*, Barrington asserted that ICRAA does not authorize a statutory penalty, so a plaintiff must demonstrate a concrete or particularized injury. Barrington argued that since plaintiffs did not allege such injuries, they lacked a beneficial interest in bringing their claims and thus had no standing. Barrington contended that plaintiffs' unfair competition claims failed for the same reasons.

5

## IV.   Plaintiffs' Opposition

In opposition, plaintiffs argued that ICRAA's text, history, and purpose show that the Legislature intended to provide standing to any consumer who suffers an ICRAA violation, even in the absence of actual damages.  Plaintiffs asserted that they had standing to bring their lawsuits because section 1786.50, subdivision (a) of ICRAA authorizes a statutory penalty of $10,000 for ICRAA violations without regard to actual damages.  Plaintiffs argued that *Limon* was inapt because the FCRA and ICRAA had different language and purposes, and because concrete harm is not a prerequisite for standing under statutes like ICRAA that create statutory penalties.  Plaintiffs thus argued that Barrington was liable under ICRAA even though it approved plaintiffs' rental applications.  They urged that ICRAA's purpose was not limited to preventing denial of housing—it was also intended to safeguard the confidentiality, accuracy, relevance, and proper use of consumer reports, and to protect consumers from identity theft.  Plaintiffs further argued that they had standing to pursue UCL claims because they paid a fee for Barrington to obtain investigative consumer reports but did not timely receive copies of the reports.

## V.   Summary Judgment

The trial court granted summary judgment, applying *Limon*'s reasoning to conclude that ICRAA did not create standing through a statutory penalty.  The court found that ICRAA's provision of a $10,000 award was intended to compensate for injuries rather than to punish.  The court found that plaintiffs could not prove a concrete injury because "they became tenants of [Barrington]" and "do not allege that any

6

information about them in [Barrington's] possession is inaccurate."

The court entered judgment in February 2024, from which plaintiffs timely appealed.

## DISCUSSION

On appeal, plaintiffs contend that the trial court erred in granting summary judgment based on lack of standing. Plaintiffs argue that section 1786.50, subdivision (a), confers standing by legislative grant, as it authorizes a minimum $10,000 recovery for ICRAA violations even in the absence of a concrete injury. Plaintiffs also argue they have standing under the UCL because Barrington took their application fees but did not timely provide them with copies of their investigative consumer reports. We address each issue in turn.

## I.     Standard of Review

"Summary judgment is designed to cut through the parties' pleadings to determine whether, despite their allegations, trial is necessary to resolve the dispute." (*Carver v. Volkswagen Group of America, Inc.* (2024) 107 Cal.App.5th 864, 876. (*Carver*).) A trial court must grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant satisfies its summary judgment burden by showing that the plaintiffs cannot prove an essential element of their claim. (*Id.* at pp. 853, 855.) If

7

the defendants meet their burden of production, the plaintiffs must then produce evidence establishing a prima facie showing that a triable issue of material fact exists. (*Id.* at p. 850.)

"On appeal from a summary judgment, we review the record de novo to determine whether triable issues of material fact exist." (*Carver, supra,* 107 Cal.App.5th at p. 877.) " 'We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.' " (*Ibid*.) "Similarly, standing is a question of law we review de novo." (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 790.) Furthermore, "to the extent we consider the trial court's interpretation and application of statutes, we apply de novo review." (*Carver*, at p. 877.)

## II. Standing Principles

***Standing Generally.*** "Only a real party in interest has standing to prosecute an action, except as otherwise provided by statute. (Code Civ. Proc., § 367.) A party who is not the real party in interest lacks standing to sue. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004.) 'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law.' " (*Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 920–921.) "A standing requirement ensures that 'courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 (*Kim*).)

"To ensure that relevant facts and issues are adequately presented, California statutes generally require that plaintiffs have suffered some injury. ([*Angelucci v. Century Supper Club*

8

(2007) 41 Cal.4th 160,] 175 ['In general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some "invasion of the plaintiffs' legally protected interests." ']; see also *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1248 ['a plaintiff is generally required to have a direct and substantial beneficial interest in order to seek a writ of mandate under section 1086'].)  However, the Legislature may authorize consumers and others whose rights have been violated to recover statutory damages or penalties absent the concrete harm required in federal court by Article III[2]; indeed, when the Legislature provides for statutory damages or penalties, it often permits individuals who have suffered no concrete harm to seek such relief.  (See, e.g., *Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1070; *Kim*, *supra*, 9 Cal.5th at pp. 83–91; [*Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030,] 1038–1041 [(*Chai*)]; *Brown v. Mortensen* (2019) 30 Cal.App.5th 931, 941–943; *Goehring v. Chapman University* (2004)

---

**2**      Article III of the United States Constitution limits federal courts to resolving actual " ' "[c]ases" ' " and " ' "[c]ontroversies," ' " meaning plaintiffs must have an " 'injury in fact' " that is concrete, particularized, and actual or imminent. The United States Supreme Court has emphasized that violation of a statutory right alone does not automatically satisfy this requirement; there must still be a concrete harm.  (*Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 342 (*Guracar*).)  " 'Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine.' " (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 738.)

121 Cal.App.4th 353, 386 [*Goehring*].)" (*Guracar*, *supra*, 111 Cal.App.5th at p. 343.)

"When, as here, a cause of action is based on statute, standing rests on the provision's language, its underlying purpose, and the legislative intent." (*Kim*, *supra*, 9 Cal.5th at p. 83; *White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1024 (*White*) ["Standing rules for statutes must be viewed in light of the intent of the Legislature and the purpose of the enactment."]; *Chai*, *supra*, 108 Cal.App.5th at p. 1037.) "We must give 'the language its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' " (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.) "If ' "the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." ' [Citation.] When the ostensible object is protection of the public, we ' "broadly construe[ ] [the statute] in favor of that protective purpose." ' (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 530.)" (*Chai*, at p. 1037; *White*, *supra*, 7 Cal.5th at p. 1024 ["Standing rules for statutes must be viewed in light of the intent of the Legislature and the purpose of the enactment."].)

***Standing Conferred By Statute Absent Injury.*** Courts have determined that some statutory schemes confer standing absent a showing of concrete injury by authorizing recovery of

10

civil penalties or statutory damages—that is, through remedies aimed at sanctioning or deterring statutory violations even in the absence of actual injury to a plaintiff.  For example, in *Chai*, *supra*, 108 Cal.App.5th at page 1037, the Court of Appeal considered whether plaintiffs who had not suffered any concrete harm nonetheless had standing to seek statutory damages under California's Fair Debt Buying Practices Act (the Debt Buyer's Act or the DBA).  Because the plaintiff-debtor admitted to having no actual injury (the sole allegation was that the debt buyer failed to include a DBA-required notice in a letter to the debtor), the trial court granted judgment on the pleadings, concluding that the plaintiff lacked standing to pursue statutory damages.  (*Id.* at pp. 1036–1037.)

The Court of Appeal reversed, explaining that in the DBA, "the Legislature treat[ed] 'damages' broadly as a triad comprising (1) compensatory relief for 'actual damages'; (2) additional individual relief in an amount of 'statutory damages' set by the court within a prescribed range; and (3) a class award of 'additional damages' based on enumerated 'relevant factors' untethered from economic injury to the class or any member." (*Chai*, *supra*, 108 Cal.App.5th at p. 1039.)  Since the DBA distinguished between statutory damages and the other types of damages, the *Chai* court reasoned that statutory damages are available automatically for any violation, while actual damages are additionally available only when a plaintiff has suffered real harm.  (*Id.* at pp. 1038–1041.)  The court concluded:  "At bottom, the Legislature . . . created an informational right and permitted those who experienced a violation of that right to recover statutory damages, thereby giving Chai and similarly aggrieved

11

consumers a beneficial interest in prosecuting the claim." (*Id.* at p. 1041.)

The court reached a similar conclusion in *Guracar*, where the plaintiff sought "statutory damages under three California statutes—the Debt Buyers Act, the [Private Student Loan Collections Reform Act (the PSLCRA)], and the Rosenthal Act—and one federal statute, the [Fair Debt Collection Practices Act (the FDCPA)]." (*Guracar, supra,* 111 Cal.App.5th at p. 343.) The appellate court considered whether each statute required plaintiff to show "concrete harm" to claim statutory damages and concluded they did not. (*Ibid.*) Relying on *Chai*, the court analyzed the relief provisions of each act and explained that each provided for both actual and statutory damages, with statutory damages functioning partly as penalties meant to punish and deter violations regardless of actual injury. (*Id.* at pp. 344–349.) For instance, the DBA and the PSLCRA had substantially identical damages provisions, authorizing both " 'actual damages sustained by that person as result of the violation' and (2) '[s]tatutory damages.' " (*Id.* at p. 347.) Likewise, under the Rosenthal Act and the federal FDCPA, plaintiffs can "recover 'an amount equal to the sum of—(1) any actual damages sustained' and (2) 'such additional damages as the court may allow, but not exceeding $1,000.' " (*Id.* at p. 348.) As each statutory scheme permitted the recovery of statutory damages in addition to actual damages, the *Guracar* court concluded that those statutes conferred standing absent concrete harm to the plaintiff. (*Id.* at pp. 347–348.)

The appellate court also similarly concluded in *Kashanian v. National Enterprise Systems, Inc.* (2025) 114 Cal.App.5th 1037 (*Kashanian*). There, the plaintiff sued a debt collector, alleging

that inconsistent font sizes in a collection notice violated the Rosenthal Act. (*Id.* at p. 1042.) The trial court granted summary judgment, concluding the plaintiff "lacked standing because of a failure to allege or demonstrate any actual injury resulting from the noncompliant notice." (*Id.* at pp. 1042–1043.) The Court of Appeal reversed, pointing out that the statutory scheme allowed recovery of both actual and statutory damages. (*Id.* at p. 1045.) The relevant statute stated that plaintiffs could recover " 'any actual damage sustained,' " plus " 'such additional damages as the court may allow, but not exceeding $1,000' " in cases brought by individuals. (*Id.* at p. 1044.)

The *Kashanian* court concluded that the statutory damages served as a penalty for the debt collector's misconduct and did not depend on proof of harm. The court emphasized that if the Legislature had intended to require actual damages for standing, it would have said so: "For example, some consumer protection statutes only permit claims by those who sustain injuries from violations. (Compare §§ 1788 et seq., 1812.702 with §§ 1780, subd. (a) [authorizing any 'consumer who suffers any damage' to bring an action under the Consumer Legal Remedies Act], 1789.35, subd. (g) ['[a]ny person who is injured by any violation' of provisions governing check cashiers 'may bring an action for the recovery of damages'].)" (*Kashanian*, *supra*, 114 Cal.App.5th at p. 1045.) Because the Rosenthal Act imposes liability for statutory damages based solely on the violation in addition to actual damages, the court concluded that consumers have standing to sue whenever the Act is violated, regardless of whether they experience actual injury. (*Ibid.*)

In each of these cases, the courts differentiated between actual damages, which are compensatory, and civil penalties or

13

statutory damages, which require no concrete injury to create standing.  Guided by these principles, we turn to ICRAA.

## III.    ICRAA Confers Standing on Plaintiffs

***Relevant Statutes.***  In 1970, California enacted the original Consumer Credit Reporting Agencies Act (the CCRAA) to regulate credit rating reports.  (*First Student Cases* (2018) 5 Cal.5th 1026, 1032 (*First Student Cases*).)  That same year, Congress passed the federal Fair Credit Reporting Act (the FCRA), a federal law that regulates the collection, dissemination, and use of consumer credit, personnel, insurance, and other information.  (*Ibid.*; 15 U.S.C. § 1681 et seq.)  In 1975, the California Legislature repealed the original CCRAA and replaced it with two statutes—ICRAA and a new CCRAA—to regulate consumer background and credit reports.  (*First Student Cases*, at p. 1032; Assemb. Bill No. 601 (1975–1976 Reg. Sess.).)  Modeled after the FCRA, these laws were designed to serve similar and complementary purposes.  (*First Student Cases*, at p. 1032.)

ICRAA's stated purpose is "to require that investigative consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for employment, insurance information, and information relating to the hiring of dwelling units in a manner which is fair and equitable to the consumer." (§ 1786, subd. (f); *First Student Cases*, *supra*, 5 Cal.5th at p. 1032; *Bernuy v. Bridge Property Management Co.* (2023) 89 Cal.App.5th 1174, 1181 ["In enacting ICRAA, the Legislature emphasized the need to ensure that 'investigative consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'  (§ 1786, subd. (b).)"].)  ICRAA "was intended to promote disclosure and accuracy in background checks, especially in the rental,

14

employment, and insurance contexts." (*First Student Cases*, *supra*, 5 Cal.5th at p. 1034.) "The statute was, in part, designed to protect consumers from identity theft by giving them 'copies of any investigative consumer reports made on them.' (§ 1786, subd. (e).)" (*Id.* at p. 1032.) ICRAA defines an "investigative consumer report" as one "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." (§ 1786.2, subd. (c).)

ICRAA requires landlords to make specific disclosures to potential tenants prior to obtaining their consumer reports. It provides: "If an investigative consumer report is sought in connection with the hiring of a dwelling unit, . . . the person procuring or causing the request to be made shall, not later than three days after the date on which the report was first requested, notify the consumer in writing that an investigative consumer report will be made regarding the consumer's character, general reputation, personal characteristics, and mode of living. The notification shall also include the name and address of the investigative consumer reporting agency that will prepare the report and a summary of the provisions of Section 1786.22."[3] (§ 1786.16, subd. (a)(3).) ICRAA also requires that any individual who is the subject of an investigative consumer report be given the option to check a box requesting a copy of the report, and that any requested copy be promptly provided. (§ 1786.16, subd. (b)(1).) Thus, like the DBA at issue in *Chai*, *supra*, 108 Cal.App.5th at p. 1041, ICRAA provides consumers with

---

[3] Section 1786.22 sets forth rules the investigative consumer reporting agency must follow in producing information and files for the consumer's inspection.

15

"informational right[s]" to the name and address of the reporting agency, a summary regarding rights to inspect the reporting agency's files, and a copy of the report. (§ 1786.16, subds. (a)(3) & (b)(1).)

Section 1786.50 establishes the reporting agency or user's liability for violating these informational rights. That section states: "(a) An investigative consumer reporting agency or user of information that fails to comply with any requirement under this title with respect to an investigative consumer report is liable to the consumer who is the subject of the report in an amount equal to the sum of all the following: [¶] (1) Any actual damages sustained by the consumer as a result of the failure or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater." (§ 1786.50.)

***Statutory Construction.*** At issue is whether the $10,000 statutory amount serves as compensation for actual harm, or whether the Legislature intended it as a deterrent and punitive measure that grants standing to plaintiffs who have not suffered concrete injuries resulting from ICRAA violations. As we explain, we conclude that the $10,000 amount operates as an alternative to actual damages and provides standing for plaintiffs to pursue their claims. Whether characterized as statutory damages or a statutory penalty, the $10,000 minimum recovery for an ICRAA violation is punitive and untethered to actual injury.

First, the language of section 1786.50, subdivision (a)(1) makes clear that actual damages and the $10,000 are separate and alternative forms of recovery. As noted, the statute provides that an agency or user who fails to comply with ICRAA is liable in an amount equal to "*[a]ny actual damages* sustained by the consumer as a result of the failure *or*, except in the case of class

16

actions, *ten thousand dollars* ($10,000), whichever sum is greater." (§ 1786.50, italics added.) It is well established that "the plain and ordinary meaning of the word 'or,' when used in a statute, is to designate separate, disjunctive categories." (*In re E.A.* (2018) 24 Cal.App.5th 648, 661; *People v. Reynoza* (2024) 15 Cal.5th 982, 991 [same]; *United States v. Woods* (2013) 571 U.S. 31, 45 [The "ordinary use [of 'or'] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.' "].) The statute's use of the disjunctive "or" between "[a]ny actual damages sustained by the consumer" and "ten thousand dollars ($10,000)" shows that these remedies are mutually exclusive. The "or" signals that the statutory amount operates as an alternative remedy, a substitute for actual damages or a concrete injury, underscoring its punitive and deterrent nature.

In *Diaz v. Fist Advantage Corp.* (C.D. Cal. 2006) 2006 WL 8428091, *3, a federal district court considered this identical issue. It found section 1786.50 unambiguous, and likewise concluded that section 1786.50, subdivision (a) "mean[s] that an individual may be awarded either actual damages resulting from a violation or $10,000." (*Ibid.*) The court concluded that a plaintiff need not demonstrate actual damages to recover $10,000 under the statute. (*Id.* at *4.) "The statute reads that when an investigative consumer reporting agency violates any provision of ICRAA, that agency owes the subject of that report either actual damages or the statutory amount. Simply put, the statute does not say that an actual injury is an element of the cause of action unless the individual suing desires actual damages." (*Ibid.*)

Section 1786.50's grammatical structure further supports our conclusion. The phrase "as a result of the failure" modifies

17

only the phrase "actual damages" in the statute. (See § 1786.50 [creating liability "in an amount equal to . . . [a]ny actual damages sustained by the consumer as a result of the failure or, except in the case of class actions, ten thousand dollars ($10,000)"].) Grammatically, this clause is positioned closest to "actual damages" and describes the causal link required for compensatory recovery. By contrast, the $10,000 statutory alternative is separated from the phrase "as a result of the failure" by the disjunctive "or." The $10,000 therefore reflects a fixed statutory remedy rather than a compensatory recovery and does not require proof of any causal nexus between the violation and an injury. Instead, the $10,000 serves to motivate compliance with ICRAA and deter future violations. (See *Goehring*, *supra*, 121 Cal.App.4th at p. 386 [" ' " '[T]he California Supreme Court has characterized as a penalty "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former." ' " ' "]; see also *People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 732 ["statutory penalties serve to motivate compliance with the law and to punish wrongdoers"].)

As the *Kashanian* and *Chai* courts said, "had the Legislature intended to limit standing to plaintiffs who had sustained actual damages, it could have done so." (*Chai*, *supra*, 108 Cal.App.5th at p. 1040; *Kashanian*, *supra*, 114 Cal.App.5th at p. 1045.) For example, the contemporaneously enacted CCRAA includes language limiting recovery to actual damages, stating that "[a]ny consumer *who suffers damages* as a result of a violation . . . may bring an action . . . ." (§ 1785.31, subd. (a), italics added.) Accordingly, only consumers who have a concrete

18

injury may bring a lawsuit under the CCRAA. In contrast, there is no such limitation in ICRAA, and nothing in ICRAA indicates that the Legislature intended to give standing only to consumers whose rental applications were denied as a result of an ICRAA violation.

*Legislative History.* The legislative history confirms what seems plain from the statutory language—that an ICRAA plaintiff need not allege an actual injury. (See *Doe v. Kachru* (2025) 115 Cal.App.5th 175, 203 [addressing statutory history even in absence of ambiguity in statutory language].)[4] ICRAA was enacted to remedy the FCRA's shortcomings. The Department of Consumer Affairs, which co-sponsored Assembly Bill No. 601 creating ICRAA, stated that ICRAA was "essential to provide badly needed protections for California consumers in areas where the FCRA has proved most sadly deficient." (Dept. Consumer Affairs, Consumer Reporting Agencies Acts, Assem. Bill Nos. 600 & 601 (1975–1976 Reg. Sess.) p. 1.) The Department of Consumer Affairs explained: "Under the FCRA, in order to collect compensation for damages, it is necessary for the consumer to prove that a consumer reporting agency negligently failed to comply with the Act. As actual damages are extremely difficult to determine (what damages are sustained

---

[4] We grant plaintiffs' December 2, 2024 request for judicial notice in part. We judicially notice exhibit A, which contains section 1786.50's legislative history. We decline to judicially notice exhibits B and C—the Attorney General's amicus curiae brief in *First Student Cases* and an April 12, 2024 order from *Carr-Susor v. Barrington Pacific, LLC*, Los Angeles Superior Court case No. 22STCV23799—because these documents are not relevant to our analysis.

19

when credit is denied?), there is little incentive for the consumer to exercise his right to sue in the event of negligent noncompliance and little incentive for the consumer reporting agency to comply with the Act, since negligence is also extremely difficult to prove." (*Id*. at p. 3.)

Assemblyman Gene Chappie, who co-sponsored Assembly Bill No. 601, similarly stated that although federal law provided for individual financial recovery for inaccurate or misleading consumer reports, federal law did not "set [a] minimum recovery" and "[i]n the past, damages have been so negligible that consumers have not been encouraged to seek reimbursement." (Assemblyman Gene Chappie, Press Release, Assem. Bill Nos. 600 & 601 (1975–1976 Reg. Sess.) Mar. 19, 1975.) ICRAA responded to the FCRA's deficiencies by setting a minimum recovery[5] when damages could not be proven.

We also note that in opposing ICRAA's enactment, consumer credit reporting groups decried the statute's strict liability regime and the Legislature's apparent intention to "award damages without regard to whether the individual has ever suffered damages." (Donald Carlton Burns, Legis. Counsel, Retail Credit Company, letter to Governor Edmund G. Brown, Jr. (1975–1976 Reg. Sess.) Sept. 22, 1975 [urging, on behalf of the

---

[5] The parties make much of the fact that the legislative histories for the enactment of and amendments to section 1786.50 describe the minimum award as both a "penalty" and as "damages." However, as explained above, semantics aside, the Legislature's intent controls. Here, the statutory language demonstrates the Legislature's clear intent not to condition recovery for an ICRAA violation on the existence of a concrete injury.

20

Retail Credit Company, a veto of Assembly Bill 601].) Bill opponents complained that "a simple typographical error could give rise to litigation and minimum damages of $300[6] and attorney's fees, although no actual damage has occurred to the consumer." (*Ibid.*) Another opponent similarly expressed its opposition to the "fine" imposed "regardless of any actual damage." (George Joseph, President, Mercury Casualty Co., letter to Governor Edmund G. Brown, Jr. (1975–1976 Reg. Sess.) Sept. 25, 1975 [urging veto of Assem. Bill 601].)

The legislative materials evince that ICRAA was designed to overcome the FCRA's practical limitations by ensuring that consumers could obtain a nontrivial recovery and thus would be motivated to enforce ICRAA, even when actual damages were nonexistent. The fixed minimum recovery, which was $300 in 1975 and has since been increased to $10,000, demonstrates the Legislature's intent to confer standing on affected consumers even in the absence of an actual injury.

For all the foregoing reasons, we conclude that plaintiffs whose ICRAA rights are violated have standing to sue and recover a statutory penalty even if they have not suffered an actual injury, thereby giving plaintiffs "and similarly aggrieved consumers a beneficial interest in prosecuting the claim." (*Chai, supra*, 108 Cal.App.5th at p. 1041.)

---

[6]     As enacted, section 1786.50, subdivision (a)(1) read the same as it does today, except that in 1975 it set the minimum recovery at $300. (Stats. 1975, ch. 1272, § 1, p. 3386.)

## IV. We Decline to Follow *Limon*

Barrington disagrees with our conclusion, urging us to apply *Limon*'s standing analysis to the present case. In *Limon*, the plaintiff alleged that his employer's background check consent form violated the FCRA. (*Limon*, *supra*, 84 Cal.App.5th at p. 681.) The FCRA provides that anyone who willfully violates its requirements is liable for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." (15 U.S.C. § 1681n(a)(1)(A).) The employer demurred, asserting that Limon lacked an injury to establish standing, and the trial court sustained the demurrer. (*Limon*, at p. 685.)

The Court of Appeal affirmed the trial court's conclusion that Limon lacked standing, highlighting that the FCRA uses the term "damages" in discussing the alternative relief of "actual damages" or " 'damages of not less than $100 and not more than $1,000.' " (*Limon*, *supra*, 84 Cal.App.5th at pp. 700–701.) The court reasoned that Congress's use of different terms—"damages" and " 'civil penalty' "[7]—in separate provisions of the FCRA indicated its intent that those terms have distinct meanings. (*Id.* at p. 701.) Noting that the FCRA does not define "damages," the court turned to dictionary definitions interpreting "damages" as monetary compensation for a loss or injury. (*Ibid.*) The court also cited case law for the proposition that damages are meant to compensate for an actual injury and that there must be harm to justify recovery of statutory damages. (*Id.* at p. 702.) The court concluded that FCRA's use of "damages" implied the existence of

---

[7] Under these circumstances, civil penalties are synonymous with statutory penalties.

an injury or loss, showing that Congress intended to limit standing under the FCRA to individuals who experienced an actual injury.  (*Id.* at p. 703.)

The *Limon* court found the plaintiff lacked standing because he had not alleged "a concrete or particularized injury to his privacy interests sufficient to afford him an interest in pursuing his claims vigorously."  (*Limon*, *supra*, 84 Cal.App.5th at p. 706.)  Noting that violation of informational rights was insufficient for standing under Article III, and citing two cases that concluded informational injury was insufficient for standing to bring a claim under two California statutes, the *Limon* court reasoned that an informational injury was not a concrete injury sufficient for FCRA standing.  (*Ibid.*)

*Limon* does not change our conclusion.  First, *Limon*'s analysis rested largely on semantics—namely, the Legislature's use of "damages," rather than "penalties," in the FCRA.  (*Limon*, *supra*, 84 Cal.App.5th at pp. 701–702.)  As the *Guracar* court explained:  "There is an obvious flaw in this logic:  It assumes that statutory damages are purely compensatory.  In fact, in many instances, such as with exemplary or punitive damages, 'statutory damages serve to motivate compliance with the law and punish wrongdoers.'  (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1598; see also *Gonzales v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1067 ['Statutory damages under the FDCPA are intended to "deter violations . . . even if [the] misconduct imposed no cost on the plaintiff." ']; *Thomas v. Pierce, Hamilton, and Stern, Inc.* (N.D.Ga. 1997) 967 F.Supp. 507, 511 [under the FDCPA 'the statutory damages award is punitive in nature'].)"  (*Guracar*, *supra*, 111 Cal.App.5th at p. 345.)

The Court of Appeal in *Chai, supra*, 108 Cal.App.5th at page 1039, also addressed this issue.  In response to an argument that if the Legislature had intended to permit suit without actual damages, it would have used the term " 'statutory penalties' " instead of " 'statutory damages,' " the *Chai* court "acknowledge[d] decisional law—under different statutes— [that] distinguish[ed] 'damages' intended to compensate a plaintiff for injury from 'penalties' intended to serve purposes such as punishment and deterrence.  (See *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 681 [discussing remedies for violation of Lab. Code, § 226, subd. (a)]; see also *Limon*[*, supra,*] 84 Cal.App.5th 671, 700–703 . . . [distinguishing between damages and penalties where a federal statute used both terms]; § 1788.30, subds. (a)–(b) [referring to 'actual damages' and an additional 'penalty']; but see § 56.36, subd. (b)(1) [providing for 'nominal damages' of $1,000 without proof of actual damages]; *Brown v. Mortensen* (2019) 30 Cal.App.5th 931, 941 (*Brown*) [explaining that nominal damages provision in § 56.36 functions as a penalty].)"  (*Ibid.*)  *Chai* went on to explain that the Legislature's broad use of " 'damages' " in the DBA, which was clearly untethered from an economic injury and "intended to do more than remedy actual injury," provided consumers standing to sue for mere noncompliance with the DBA absent any injury.  (*Id.* at pp. 1039–1040.)  Similarly, the *Guracar* court concluded the DBA's "statutory damages plainly have a punitive component." (*Guracar, supra*, 111 Cal.App.5th at p. 345.)

*Guracar* and *Chai*'s observations are well founded. Accordingly, we conclude that the semantic distinction between "damages" and "penalties" is not dispositive of standing.  Instead, legislative intent, as evidenced by how the Legislature chose to

24

structure the remedy and the purpose it sought to achieve, governs our standing analysis.

Second, although the FCRA and ICRAA share similarities, key differences in their purposes and language significantly affect the standing they offer consumers. Congress designed the FCRA primarily to safeguard the banking system from the harm caused by inaccurate credit reports, which "impair the efficiency of the banking system" and erode "public confidence which is essential to the continued functioning of the banking system." (15 U.S.C. § 1681(a)(1).) By contrast, the California legislature enacted ICRAA to protect consumers from inaccurate information in investigative consumer reports, as well as identity theft, which can seriously harm individuals in employment, housing, and licensing contexts. (§ 1786, subds. (a) & (c).) As noted above, ICRAA was specifically designed to fill the consumer-protection gaps left by the FCRA and empower consumers.

Moreover, while Congress may have sought to approximate actual damages through the FCRA's range of $100 to $1,000 (15 U.S.C. § 1681n(a)(1)(A)), that does not appear to be the case for ICRAA since ICRAA's mandatory recovery is ten times more than FCRA's maximum. This strongly indicates ICRAA's $10,000 minimum recovery was "intended to do more than remedy actual injury." (*Chai, supra*, 108 Cal.App.5th at p. 1039; see *Goehring, supra*, 121 Cal.App.4th at p. 386 [a penalty is " ' " ' "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage." ' " ' "].)

For all these reasons, we conclude plaintiffs need not prove actual harm to bring an ICRAA claim; a violation of their informational rights alone entitles them to the statutory penalty and provides standing to pursue an action.

## V. Plaintiffs Lack Standing to Pursue Their Unfair Competition Claims

Three plaintiffs—Lin Soh, Ada Morral, and Justin Rudolph—asserted causes of action under the UCL (Bus. & Prof. Code, § 17200 et seq.).  In the trial court, Barrington argued that these plaintiffs lacked standing because they had "not lost money or property as a result of any unfair competition" because their rental applications were approved and they became tenants.  The court agreed and granted summary judgment on both the UCL and ICRAA claims.

These three plaintiffs argue that they have standing to pursue the UCL claims because these claims are predicated on ICRAA violations, which do not require concrete injury.  Additionally, plaintiffs assert, "Barrington deprived [plaintiffs] of 'property' within the meaning of Business & Professions Code section [17204] when it failed to offer access to their consumer reports and it caused the [plaintiffs] to lose 'money' for purposes of [Business and Professions Code] section [17204] when it accepted a $41.50 application fee but failed to offer the [plaintiffs] their consumer reports that the fee was used to obtain."

"The UCL prohibits, inter alia, 'any unlawful, unfair or fraudulent business act or practice. . . .' (§ 17200.)  In order to give substance to this prohibition, a UCL action ' " 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices. . . ." ' (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.)" (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590 (*Peterson*).)  Business and Professions Code section 17204 gives standing to "any person who ' " 'has suffered injury in fact and has lost money or property as a

26

result of such unfair competition.' " " ' " Thus, "only plaintiffs who have suffered actual damage may pursue a private UCL action. A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson*, at p. 1590.) The " ' "injury in fact" ' " test requires parties to show that they have suffered concrete, particularized, and actual (not hypothetical) invasions of legally protected interests. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 731.)

As Business and Professions Code section 17204 expressly requires an injury in fact and economic injury, we reject plaintiffs' first argument that they have standing because the UCL cause of action is predicated on a violation of ICRAA, which does not require concrete injury. We therefore consider whether plaintiffs have alleged any actual injury. Plaintiffs urge in this regard that they were harmed because they were required to pay for a report that they were not given a copy of. We do not agree. The rental application specified that in order to apply for a Barrington units, an applicant had to provide a "non-refundable processing fee . . . which is to be used to screen [the] Applicant with respect to credit history and other background information." The application broke down the elements of the $41.50 fee: $22.99 for credit and screening reports, and $18.51 in costs, including overhead and soft costs, related to the processing of the application. The application did not suggest that the fee was for a consumer report to be provided *to the applicant*. Accordingly, the undisputed evidence shows the plaintiffs received precisely what they paid for: the processing and consideration of their rental applications, which resulted in their approval as tenants.

27

The failure to provide plaintiffs copies of their consumer reports within three days also does not amount to an "injury in fact" because plaintiffs do not allege that they suffered concrete or particularized harms as a result. The statutory obligation to provide a report under the ICRAA exists to ensure transparency, not to confer a compensable property right or guarantee any economic benefit. Plaintiffs identify no lost opportunity, adverse action, or financial detriment caused by the timing or absence of the report. Indeed, their applications were approved and they obtained the very housing they sought. Because plaintiffs did not lose money or property, and have not shown concrete or particularized injuries arising from the ICRAA violations, they fail to meet the standing requirements of Business and Professions Code section 17204.

28

## DISPOSITION

The judgment is reversed as to plaintiffs' ICRAA claims and affirmed as to plaintiffs' UCL claims. The trial court is directed to vacate its order granting the motion for summary judgment and enter a new order (1) denying the motion as to plaintiffs' ICRAA claims, and (2) granting the motion as to plaintiffs' UCL claims. Plaintiffs are awarded their appellate costs.

EDMON, P. J.

We concur:

EGERTON, J.

HANASONO, J.